SALLIE J. SAILER

v.

WILLIAM R. H. SAILER et al.

That a tenant in common was mistaken as to the extent of his interest when he took possession of the premises, and during his subsequent occupation, is not sufficient to require him to account to his cotenants for his use thereof, where it does not appear that he ever excluded any of them, or that they ever made any claim or demand upon him in the assertion of their rights.

Bill for partition.　On exceptions to master's report.

*Mr. M. P. Grey*, for complainant.

*Mr. D. J. Pancoast*, for exceptant.

THE CHANCELLOR.

This is a suit for partition of land in Woodbury, held by equitable title. In 1807 the property was conveyed by a tripartite deed to Charles Potts, in fee, in trust to permit Sarah Harker (wife of Jonathan Harker), notwithstanding her coverture, to have and enjoy for life, the rents, issues and profits thereof, or for such other uses, intents and purposes as she should think fit; and upon the further trust to convey, assure, order and dispose of the property to her children by her before-men-

tioned husband, in fee, as tenants in common, reserving the uses and profits thereof to her for life. She had four children by Jonathan Harker. They were Achsah, who married William Sailer, and died intestate July 29th, 1865; Ann, who died unmarried and intestate in 1870; Henrietta, who married Jeremiah Haines, and died intestate in 1872, having never had any children, and William B., who died a bachelor, intestate, in 1874. As already appears, of the children, Achsah alone had issue. At her death she was a widow. She had three children, Charles, who predeceased her (he died intestate in January, 1865), Richard, who also predeceased her (he died intestate in 1861), and William R. H., who is still living, and is one of the defendants. Charles left a widow, who is dead, and three children, the defendants William B. Sailer, Mary B. Stewart and Eugene B. Sailer. Richard left a widow still living. He had only one child, Sallie J. Sailer, the complainant. It does not appear that Potts or his heirs ever conveyed the property to any one. It is said that he is dead, and that neither his heirs nor any one else holding the legal title to the property under him or them can be found. He was bound by the trust to convey the property to the children of Sarah Harker at the death of her husband, Jonathan Harker, subject to her life estate. Jonathan Harker died in 1815. Sarah Harker died in 1845. In equity, under the circumstances, that which Potts, or any other person holding the title under him, ought to have done will be considered as having been duly performed at the time when it should have been done. The class of persons to whom the remainder was to go was complete at the death of Jonathan Harker. It consisted of the four children, in whom the remainder was then equitably vested. Each was entitled to one-fourth. Achsah died, as before stated, July 29th, 1865. Her fourth descended as follows: one-third to her son, the defendant William R. H. Sailer; one-third to the three children of her deceased son Charles, and one-third to the complainant, the child of her deceased son Richard. Upon the death of the other three children of Sarah Harker, which took place subsequently, their shares descended to the same persons in the same

shares; so that the defendant William R. H. Sailer became, and is now entitled to one-third of the property; the defendants William B. Sailer, Mary B. Stewart and Eugene B. Sailer to one-third, and the complainant to a third. William B. Harker, the last survivor of the children of Sarah Harker, died, as before stated, in 1874. He was in possession of the property up to his death. On the 25th of March, 1875, the defendant William R. H. Sailer, who was the only surviving grandchild of Sarah Harker, entered into possession of the property, and has had such possession ever since. He appears to have supposed that he was the sole owner of the property by descent. It consisted of a lot of land on Broad street, in Woodbury, upon which were two houses, a double and a single one. He has occupied, personally, half of the former as his own residence, and has let the other half to tenants, and has taken the rent. The other house was in so dilapidated a condition when he took possession that it could not be repaired, and he tore it down and built a new one in its place, in 1877. He also made improvements upon the double house, putting a mansard roof upon it &c., in 1881. He has also made other permanent improvements upon the premises. The bill prays for a partition of the property, and for an account from him of the rents, issues and profits during the time of his occupation. The master reported that the parties are seized of the property in the shares above stated, and that William R. H. Sailer is indebted to the other tenants in common upon the account in the sum of $244.72, which is two-thirds of the balance, $367.08, remaining after deducting the amount of his expenditures, $3,213.52, and the amount allowed him for taking care of the property, $274.69, from the amount of rents received by him, $2,246.92, and the value, $1,608.37, of the use and occupation by him of the part of the property occupied by him as a place of residence. Mr. Sailer has excepted to the report, because the master has reported that he is entitled to only one undivided third of the property; also, because the master has charged him in the account with the value of the use and occupation of the part of the property occupied by him as a place of residence; and he insists that if he is

Sailer *v.* Sailer.

bound to account for such use and occupation, the amount with which he is charged is excessive. He excepts on the ground also that the allowance made to him for taking care of the property is too small.

The report upon the subject of the interests of the parties in the premises to be partitioned is correct. The allowance made for taking care of the property appears to be reasonable. It is ten per cent. upon all the rents collected by Mr. Sailer. The report is erroneous in charging him with the value of the use and occupation. There is nothing in this case to take it out of the ordinary rule upon this head, which is, that in order to render one cotenant liable to another for rent, or for use and occupation, there must be something more than a mere occupancy of the estate by the former and a forbearance to occupy by the latter. *1 Washb. on R. P. 420* ; *Izard* v. *Bodine, 3 Stock. 403* ; *Davidson* v. *Thompson, 7 C. E. Gr. 83* ; *Barrell* v. *Barrell, 10 C. E. Gr. 173* ; *Henderson* v. *Eason, 17 Ad. & El. (N. S.) 701, 718* ; *McMahon* v. *Burchell, 2 Phillips 126* ; *Sargent* v. *Parsons, 12 Mass. 149.* But it is urged that Mr. Sailer is not within the rule because in his testimony he says that he has occupied exclusively, and because it appears that he occupied, not as tenant in common, but as owner of the whole property in severalty. He says, indeed, that he had exclusive occupation, but by the word "exclusive" he evidently did not mean that he occupied to the exclusion of any of his cotenants. None of them ever made any claim or demand upon him either to let the property to any one or to permit them to occupy part of the premises. What he meant was that he alone had had possession and that he had had full possession. The attention of the court is called upon this point by complainant's counsel to the fact that it appears, by the account taken by the master, that Mr. Sailer received $300 rent from William B. Sailer, one of his cotenants, for the single dwelling-house, from September 16th, 1882, to October 16th, 1884. Under what circumstances the latter so occupied as tenant does not appear; but it does appear that the letting was long after the date of the filing of the bill, which was March 24th, 1877. The bill makes no allegation that Mr. Sailer ex-

cluded any of his cotenants, nor is any inequitable act charged upon him, nor any unfair conduct imputed to him in that matter. Nor does he in his answer claim a right to exclusive occupation nor to any particular interest in the property. All he says upon the subject of his interest therein is that he took possession and made improvements under the belief that, as the nearest living descendant of Jonathan and Sarah Harker, he was the lawful owner in fee of the whole of the property. The fact that he was mistaken as to the extent of his interest when he took possession and during his occupation is of no consequence in the consideration of the question as to his liability to account for use and occupation. He was none the less a tenant in common. Nor will the fact that he had full possession charge him.

The account must be restated by striking out the charges for use and occupation and all allowances for disbursements by Mr. Sailer for or in respect to taxes upon or ordinary repairs to the part of the property occupied by him. As to the permanent improvements thereon, they appear, as do all of the other permanent improvements put upon the premises by him, to have been proper and judicious, and to have been carefully and economically made. No objection is made by the complainant or any of the defendants to the allowances made by the master to him for the permanent improvements.

The exception in reference to the charge for use and occupation is allowed; the others are disallowed. No costs of the exceptions will be awarded to either side.