CENTRAL COFFEE AND SPICE COMPANY, Respondent, v. F. I. WELBORN, Appellant.

Kansas City Court of Appeals, January 30, 1911.

1. TRESPASS: Malicious Attachment: Actions Distinguished. The defendant in this action committed the trespass in question, by directing the constable to levy on the goods of the plaintiff corporation, after the defendant in the original attachment suit, who was also president of the corporation, had informed the constable, in the presence of the plaintiff in the original attachment suit (who was the defendant in this action) that the goods belonged to plaintiff herein, a corporation, which was not a party to the original attachment suit. *Held*, that where the gist of the petition is that the defendant willfully,

maliciously and wrongfully caused the constable to seize plaintiff's goods, well knowing that they belonged to plaintiff, and the petition in addition sets out the foregoing facts, the petition states a cause of action for trespass *vi et armis*, and not one for malicious and wrongful prosecution of the attachment. Hence an allegation that the prosecution was without probable cause is unnecessary.

2. DAMAGES: Trespass: Distinguished from Malicious Attachment. In an action for trespass *vi et armis* for willfully, maliciously and wrongfully levying upon plaintiff's goods, where the plaintiff corporation was not a party to the original attachment suit by virtue of which the levy was made, it was error to instruct the jury that they might take into consideration, in assessing compensatory damages, the value and amount of money and time expended by the corporation in defending said attachment suit.

3. DAMAGES, PUNITIVE: Trespass. Where, in another action to which the plaintiff corporation was not a party, the defendant caused the constable to seize plaintiff's goods, knowing that they were its property, the act was wrongful, intentional, and malicious, provided the jury so found, and an instruction, in this action by the plaintiff corporation for trespass *vi et armis*, that the jury might allow punitive damages was proper.

4. APPELLATE PRACTICE: Error: Cured by Remittitur. In an action for trespass *vi et armis*, where the jury rightfully found punitive damages, but also, under an erroneous instruction, found compensatory damages, the cause will stand reversed and remanded unless the plaintiff enters a remittitur of the amount allowed as compensatory damages.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED, CONDITIONALLY.

*W. F. Riggs* for appellant.

*W. F. Zumbrunn* for respondent.

BROADDUS, P. J.—This is a suit for an alleged trespass. On February 9, 1909, J. W. Periman and the defendant, Welborn, commenced a suit in a justice court and sued out a writ of attachment against the property

of Nancy and A. L. Welsh, non-residents of the State of Missouri. A L. Welsh, the president of the plaintiff corporation, was in the possession of a store of goods in Kansas City, Missouri. When the constable came to the store, he asked Welsh who owned the goods. He told him that he, Welsh, owned them. The constable then informed him that he had a writ of attachment and of his intention to levy on them; Welsh then informed the constable that the goods belonged to the plaintiff herein, the Central Coffee & Spice Company. The constable levied the attachment on the goods, but informed Welsh that if they were the property of said company he would release them, if he would make an affidavit to that effect. This was agreed to, and an attorney was sent for and in about two hours afterwards the affidavit was prepared and executed, and the constable released the goods. At the same time the constable made a statutory levy on twenty shares of stock, standing in the name of A. L. and Nancy Welsh.

There was evidence tending to show that when the constable came to levy on the goods he was accompanied by the defendant. Welsh was asked whether defendant made any remark regarding the attachment suit, and what he intended to do after the constable came back and released to him the key to the store. A. "Why, he said if he could not get it one way, he would get it another," referring we presume to his debt. Witness further testified that defendant was, "very angry and mad all the time he was there." He was allowed to state over the defendant's objection that he paid $35 as a fee to his lawyer to get the property released. He was allowed to state over defendant's objections whether he lost any of the time of his employees during the existence of the levy. His answer was that, he had three employees and that he lost their services for the afternoon of that day. That he paid one of them at the rate of $10.50 and the other two $15 a week.

The constable was called to testify as to the levy, to which defendant objected. His testimony is about as stated by Welsh. He also testified over the objections of defendant that defendant directed him to levy on the goods.

The defendant showed that the attachment was sustained and judgment rendered on the demand, as against the said certificate of stock in the plaintiff corporation.

The court instructed the jury in substance, if they found that defendant knew that the goods were the property of plaintiff and directed the constable to seize them under the writ of attachment, their verdict should be for plaintiff and they should assess its recovery in such sum as would compensate it for all damages and loss as described in the evidence; and that in assessing such damages by way of compensation, they were at liberty to take into consideration the value and amount of money and time expended in defending said attachment suit, if any, not to exceed fifty dollars; and further that if the jury believed from the evidence that defendant, knowing the goods levied upon belonged to plaintiff, did maliciously and wrongfully direct and secure a levy upon the goods of plaintiff, that in addition to the actual damages sustained by the plaintiff they might assess punitive damages in such sum as they might think proper, not exceeding $500 as a warning to others.

The jury returned a verdict for $50 compensatory damages, and for $250 punitive damages.

The appellant insists that the petition does not state a cause of action, for the reason, from what we gather from his argument, that it does not allege that the prosecution was without probable cause. It seems that appellant entertains the idea that this is an action for the wrongful suing out and prosecution of the attachment. But it is not such. The facts alleged in the petition makes the case one for trespass *vi et armis*.

And he further insists, that as the attachment was sustained, the plaintiff was not entitled to recover. But the gist of the cause of action as set forth, is, that.the defendant willfully, maliciously and wrongfully caused the constable, under the writ of attachment issued, to seize plaintiff's goods well knowing that they belonged to the plaintiff. This was a statement of a cause of action in trespass and not for wrongful and malicious prosecution of the attachment.

The court seemed to have fallen into the error, that the action was for wrongful prosecution of the attachment, in telling the jury to take into consideration any damages plaintiff may have sustained ' and money expended in defending the damage suit. As the defendant sustained the attachment and recovered judgment against the said shares of stock, it was a successful and justifiable proceeding, and plaintiff suffered no injury thereby. And moreover, he was not a party to the litigation in any way, as he neither pleaded nor was he impleaded in the cause. The action stated was not for the wrongful suing out and prosecution of the attachment, but was specifically one for causing the writ therein to be wrongfully levied on plaintiff's goods, who was not a party to the proceedings.

If the defendant caused the constable to seize plaintiff's goods knowing that they were its property, the act was wrongful, intentional and malicious, and without excuse or justification; all of which was a matter for the jury.

The instruction to the jury that they might allow punitive damages was proper under the allegations and evidence. The rule in such cases is stated in Buckley v. Knapp, 48 Mo. 152, to be that: "In all actions for tort, whether for assault and battery, or for trespass or libel or slander, where there are circumstances of oppression, malice or negligence, exemplary damages are allowed, not only to compensate the sufferer, but

to punish the offender." [Baxter v. Magill, 127 Mo. App. 392.]

Many errors are assigned by appellant which we consider immaterial. For error noted the cause will stand reversed and remanded, unless the respondent within ten days enters a remittitur of the balance, fifty dollars allowed as compensatory damages by the jury. If such remittitur be made the cause will stand affirmed. All concur.