The complainants in this cause are Henry K. Fort and Mary P. Fort, his wife, the latter being a nominal complainant only so far as the transactions in connection with this cause are concerned; "complainant," where used, will be understood to refer to Henry K. Fort.
The bill in this cause, as amended, seeks to terminate a trust in certain real estate situate in Gloucester City, New Jersey, of which the complainant is trustee; to relieve the trustee of his duties upon an accounting; to compensate the complainant for services, and to allow him expenses and counsel fees; for partition or sale of the property; the charging of the shares of the parties in interest with certain liabilities on property in Pennsylvania; and the determination of certain other questions incident to the matter.
In 1924, the complainant was a member of a syndicate which purchased from the receivers of the Pusey Jones Company a number of tracts of land of large area, and personal property, in consideration of $516,000. The deed for this property was executed by the receivers of the Pusey Jones Company, dated July 8th, 1924, and was made to the complainant individually, but his beneficial interest was thirty per cent. of the whole. The consideration for said property was paid by the various parties constituting the syndicate. Afterward, by deed dated October 4th, 1924, the complainant and the other persons making up the syndicate, together with their respective wives, conveyed these premises to Henry K. Fort, the complainant, which deed set forth in the habendum the following trust:
"In trust nevertheless to sell transfer convey and dispose of said property including both real estate and personal property from time to time at such price or prices and upon such terms as shall be agreed in writing by the majority in interest of the members of the above mentioned syndicate composed of Henry K. Fort, J.M. Goldwater, Abraham Perez, Harry Brocklehurst, James H.J. McNally and Henry A. Gilbert without any liability upon the part of any purchaser or purchasers to look to the application of the purchase money." *Page 221 
On the same day that the deed was executed, an agreement was also executed, setting forth the respective interests of each of the persons interested in the syndicate and the disposition to be made of the proceeds to accrue from the sale of this property.
Beginning with the meeting of the members of this syndicate held July 23d 1924, minutes were kept of all meetings and such further action with regard to the sale and management of the property, so far as any writings are concerned, must be gathered from these minutes, for there seems to be no formal agreement among the members of the syndicate except those contained in the deed and the agreement dated October 4th, 1924, to which reference has been made above.
At the first meeting, the complainant was unanimously elected as manager, with full authority to decide on the sale, price, and terms of sale of the machinery and real estate, and James McNally, another member of the syndicate, was "appointed as Mr. Fort's assistant to look after the property at Gloucester and generally to supervise the conditions there at a salary of $100 per week."
At the same meeting, there appears a motion with reference to compensation of Mr. Fort which reads:
"Upon motion duly made and seconded, it was authorized that Henry K. Fort is to be allowed five (5%) per cent. commission on all sales of all machinery and real estate, for the entire purchase recently made (Pusey and Jones Plant) with the exception of what is known as the Administration Building, listed as parcel five (5) in the catalog. He is to receive no commission for the sale of this building. Mr. Fort agreed that where sales were effected by any of the other interests in the said plant, as represented at this meeting to any person or persons other than themselves, that he would divide his commission with such interest, provided that the purchaser or purchasers produced by such interest were not those with Mr. Fort had had previous dealings."
At a subsequent meeting, held April 13th, 1925, the minutes set forth:
"There was a discussion held as to the cutting down of expenses, and as there is also a lack of proper co-operation on the part of the assistant manager, J.H. McNally with the trustee, Henry K. Fort, the terminating of Mr. McNally's services as assistant manager was left in the hands of Henry K. Fort, trustee, to act as he sees fit." *Page 222 
At a meeting, held April 20th, 1925, the following minute appears:
"Henry K. Fort reports as follows:
Mr. Fort reports that on April 13th, acting under the authority given him at the meeting of the members of the Port of Phia. Terminals on that day, in order to cut down expenses and on account of lack of co-operation on the part of Mr. Jas. H.J. McNally, he notified Mr. McNally that his services as assistant were to terminate as of that date, and that Mr. McNally's salary terminated as of April 18th."
Through the operations of the syndicate, all the money originally invested by the members was returned to them, and profits of about $200,000 were divided in addition. The machinery, equipment and personal property was sold from time to time, as well as parts of the real estate. The complainant, Mr. Fort, was the active member of the syndicate, so far as making the sales and looking after the property was concerned, and the commissions at the rate of five per cent. which he received on these sales aggregated a considerable sum of money, possibly $60,000, and was in addition, of course, to his share of the profits from the enterprise.
In addition to looking after the property at Gloucester City, New Jersey, Mr. Fort also looked after a garage property in the city of Philadelphia, Pennsylvania, the legal title to which was taken as part consideration for the sale of a part of the Gloucester City property. From time to time Mr. Fort presented his statements and accounts to the syndicate, as appears by the minute book which was kept up until nearly the end of 1930. The other members of the syndicate attended almost all of these meetings and considered the matters connected with the operations of the syndicate. One of the members of the syndicate was Harry Brocklehurst who had originally a four-tenth interest.
The syndicate adopted the name of "Port of Philadelphia Terminals," in which name the bank account was opened.
Because of the depression and the consequent inability to obtain a market for the real estate, now the subject of these proceedings, it has not been possible to close up the affairs and carry out the evident plans of the syndicate to sell all *Page 223 
of the lands they had acquired. Therefore, the complainant seeks to be relieved of the trust, to have the lands partitioned or sold, the respective interests determined, and the liability of the respective shares ascertained (in case an actual partition is made) for such charges as may be deemed proper.
The complainant, in his original bill which was filed July 31st, 1931, made no claim for compensation for services as trustee or manager in addition to what he had received by way of the commissions paid to him upon the sale of property. This claim was set up in an amendment to the bill filed September 29th, 1933. The answering defendants all resist his claim for additional compensation as trustee or manager, and insist that no such additional compensation was ever agreed upon and that the commission so fixed was intended as compensation in full for all services.
In the absence of any further agreement as to compensation with the other members of this joint enterprise, which in effect, so far as this real estate is concerned, could be said to be a tenancy in common, it would seem that the commission so fixed was to be the entire compensation to the complainant.
During the period from July, 1924, when this property was acquired, until the end of 1930, which is the last record we have of any minutes kept by the syndicate, no claim was ever presented by Mr. Fort asking to be compensated for his services as manager or trustee, in whichever capacity he acted, in addition to his commission, although he did present bills from time to time covering his expenses and disbursements. Neither were the defendants apprised of any such claim until the filing of the amendment to the bill in 1933. While of course, if he were legally entitled to be compensated for his services, his delay in making the claim therefor would not necessarily bar him from their allowance, still his whole course of conduct, I think, indicates that he considered the commissions so fixed to be his full compensation, particularly in view of the fact that he must, naturally, have anticipated that they would amount to a very considerable sum of money. *Page 224 
Complainant is not entitled to any compensation above his commissions.
There was some litigation deemed to have been necessary by the complainant in connection with this property, and expenses and counsel fees were necessarily incurred. Mr. Fort also incurred certain expenses in connection with his management of the properties so held by him as trustee, and under his management, and claims certain reimbursement for office rent, telephones, and other incidentals, the details of which are not now completely before me, it being the understanding that these matters should be referred to a special master for a report, along with the necessary accounting. When the report is made by the master, I can then determine the proper amounts to be allowed to Mr. Fort for his disbursements, and expenditures and counsel fees incurred on account of the syndicate property.
By an agreement dated July 1st, 1927, between Henry K. Fort, individually and as trustee, joined in by his wife, in which they were designed as sellers and John A. Lafore, designated as buyer, it was agreed that certain tracts of land, together with buildings, equipment, and other property, and certain rights, privileges and easements, being a part of the so-called syndicate property, should be sold by the sellers and purchased by the buyer. The consideration, as appears by such agreement, to be paid by the buyer was $250,000 in cash, and "(b) The conveyance to the Sellers, or their nominee, by the said buyer and his wife, Anne F. Lafore, of the property situate in Philadelphia, Pennsylvania, bounded by Twenty-fifth street, Oakford street, Taylor street and Wharton street, together with the buildings and improvements thereon, together with the boilers, engines, line shafting, electrical apparatus, heating and plumbing fixtures and equipment, free and clear of all liens and encumbrances, excepting the existing mortgage of seventy thousand dollars ($70,000), and also subject to drainage rights in Twenty-fifth street and obvious easements affecting the said premises; the title thereto shall be good and marketable, insurable by the Real Estate Title Insurance and Trust Company at its regular rates, subject as aforesaid." *Page 225 
This agreement was carried out and the premises in the city of Philadelphia conveyed to Henry K. Fort by deed dated September 2d 1927, and recorded the next day. The stated consideration in this deed was the sum of $1.00 and other valuable considerations, and the deed contained the following provision:
"Under and subject, nevertheless, to the payment of, a certain mortgage debt or principal sum of seventy-thousand dollars ($70,000) with interest, secured thereon by mortgage from John A. Lafore to Penn Mutual Life Insurance Company dated April 19th, 1923, recorded at Philadelphia in the Office for the Recording of Deeds, etc., in Mortgage Book JMH No. 3012, page 533, etc."
It will be noted that the agreement entered into, by which Fort acquired this property, only provided for the conveyance of the grantors' equity; there was no provision in the agreement which required the insertion of the language in the deed which complainant now contends constitutes an assumption of the mortgage of $70,000 then covering the premises.
This becomes important in view of the fact that the complainant now insists that the defendant Elizabeth C. Brocklehurst, and the executors and trustees of Harry Brocklehurst, deceased, are, together with the complainant and the other defendants, liable for the payment of any deficiency which may come about by reason of the foreclosure of this mortgage. Some dependence is placed by the complainant on a minute of a meeting of the syndicate held September 7th, 1927, which, after referring to the transaction regarding the settlement as a result of this agreement with Lafore, afterward assigned to the Lang Company, reads:
"As part consideration we received equity in property at 26th 
Wharton Streets, which is assessed at $90,000 subject to mortgage of $70,000 which comes due in April, 1928. There being no basis for determining the value of property we are taking it in at the assessed value.
Upon motion duly made and seconded, it was agreed that a trust agreement be given to H.K. Fort, to sell, lease, repair, advertise, etc., the property taken in exchange from Lang Company at 26th Wharton. We assigned to the Lang Company our lease for the right to collect for use of water from power house yard." *Page 226 
As I read it, this minute in no way approves or ratifies the insertion of this so-called assumption clause in the deed, and there appears to be no satisfactory explanation as to why the complainant accepted the deed with such a clause.
The operation of this property at Twenty-sixth and Wharton streets, Philadelphia, was not particularly successful, and it still remains in the name of the complainant. No trust agreement was ever executed in connection with the property and the equity, if any, therein may well be considered to be now owned by the present syndicate, the complainant having the legal title thereto, but undoubtedly in trust, because of the fact that this equity was taken in part payment of the real estate conveyed to the Lang Company.
Efforts were made to make this property productive, expenditures were incurred, certain moneys were advanced to pay interest and satisfy taxes on these premises; Harry Brocklehurst, who was then living, advanced moneys, and with others interested undoubtedly tried to protect the equity in the property. The mortgage became due, and the mortgagee, Penn Mutual Life Insurance Company, insisted upon payment. By an agreement designated as an extension letter, dated April 11th, 1930, the mortgage was extended by the Penn Mutual Life Insurance Company, the principal having been reduced to $67,500. This extension agreement was signed by the complainant, Henry K. Fort, and by Henry A. Gilbert, Jacob M. Goldwater and Harry P. Fort, who were interested in the syndicate, but not by Harry Brocklehurst or Elizabeth C. Brocklehurst.
It is now contended by the complainant that the executors of Harry Brocklehurst, as well as his widow, Elizabeth C. Brocklehurst, are contingently liable for any deficiency upon this mortgage, either because of the assumption clause in the deed or the extension agreement, as well as for taxes and assessments remaining due and unpaid.
On this question I find that no liability was incurred by Harry Brocklehurst because of the so-called assumption clause in the deed from Lafore to Fort, because he did not consent to this assumption clause which was not included in the agreement between Lafore and Fort; and if it should be *Page 227 
construed to be an enforceable assumption clause, it could only affect Fort personally, the deed having been accepted in that form by him, contrary to the form of written agreement which only provided for the purchase of the equity in these premises. The Brocklehurst interests could not be bound by the extension letter which was not signed by either Harry Brocklehurst or his wife Elizabeth Brocklehurst, who both held interests at that time, because neither one of them agreed to it, and any authority to execute it would have to be such an authority as would be binding on them and given in such a way as to make it clear that they consented to or were bound by such an agreement. While it is true that Harry Brocklehurst showed, by advancing money and taking an interest in the matters connected with this property, that he was hopeful of obtaining a sale for it sometime, he never went to the extent of making himself personally liable for this mortgage.
So far as money expended by the complainant and the others interested in connection with this Philadelphia property, an accounting should be had showing these expenditures up until this time, together with expenditures also made so far as the Gloucester City property is concerned, and the complainant, as well as the others interested, is entitled to reimbursement; these amounts can be determined upon the coming in of the master's report.
Neither the defendant Elizabeth C. Brocklehurst nor the executors and trustees of Harry Brocklehurst, deceased, will be charged with any contingent liability on the mortgage.
As to the liability of those who signed the extension agreement, this is a matter which must be determined in another suit when the Philadelphia property is disposed of. I doubt that this court has any further jurisdiction with respect to this property situate in Pennsylvania.
Testimony was taken upon the question as to whether the lands in question could be actually partitioned among the owners without great prejudice to their interests. Counsel for all answering defendants have agreed that these lands can be actually partitioned, and I find from the evidence that *Page 228 
such is the case. Upon an actual partition, the shares of the respective parties will be charged with their proper proportion of the taxes against the premises, as well as such other amounts as may be found to be properly chargeable upon the coming in of the master's report. The interests of the respective parties are undisputed and with other undisputed matters will be disposed of in the decree.