50 N.J. Super. 156 (1958)
141 A.2d 324
ALVERDA M. BAIRD, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
MARGARET B. MOORE, ADMINISTRATRIX OF THE ESTATE OF HERBERT G. MOORE, DECEASED, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1958.
Decided May 9, 1958.
*160 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Thomas M. Farr argued the cause for defendant-appellant and cross-respondent.
Mr. Solomon Lautman argued the cause for plaintiff-respondent and cross-appellant (Mr. Alan C. Sugarman, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff brought this action for the partition of a leasehold estate held by herself and her *161 brother, defendant's intestate, as tenants in common of a certain dwelling in Ocean Grove and for an accounting. The leasehold was for a term of 99 years, renewable perpetually. See Brown v. Havens, 17 N.J. Super. 235 (Ch. Div. 1952). The demand for accounting is based partly upon expenditures made by plaintiff for the maintenance of the property involved and for the discharge of a mortgage lien thereon, and partly upon the asserted obligation of the decedent under an agreement claimed to have been made by the brother and sister during their mother's lifetime whereby they would contribute equally to her support and maintain her in the premises which are the subject matter of the demanded partition.
The judgment entered in the Chancery Division (a) ordered partition by sale of the premises; (b) awarded to plaintiff a lien on the proceeds of sale in the sum of $3,696.79, representing the excess of payments by the plaintiff until December 1, 1951 for maintenance and mortgage indebtedness over receipts of room rentals from the property; (c) allowed each party taxed costs and a counsel fee of $1,500, to be paid from the proceeds; (d) directed the payment of the balance in equal one-half shares to the parties; and (e) adjudicated the liability of the estate of the intestate brother to the plaintiff in the sum of $4,120.72 on the alleged agreement for maintenance of the mother. The defendant is appealing the adjudication last mentioned. The plaintiff cross-appeals the allowance of counsel fees and the disallowance by the trial court, in assessing defendant's liability in the accounting for maintenance expenses, of any contribution by defendant for the period of time subsequent to December 1, 1951, when the decedent left the common household of the parties in the premises and made his home in Washington, D.C.
Prior to 1944 the mother of the plaintiff and of the decedent brother, Herbert G. Moore, held title to the leasehold and lived in the property with her son, deriving some income from the rental of rooms in the summers. Plaintiff was a widow, with money of her own. Herbert was a young *162 and impecunious young man. In May 1944 Herbert went into the armed forces, and plaintiff came to live with and keep house for her mother, whose ability to care for herself had apparently begun to decline. The mother soon after executed an assignment of the leasehold to her children, as tenants in common.
Herbert was discharged from the armed forces in 1945 and returned home. Plaintiff outfitted him with clothes when he left the army and furnished him moderate sums of money from time to time. She advanced substantially all the funds needed to run the household and paid the maintenance charges on the property, being partially recompensed by the receipts from summer room rentals. In 1944 she paid off a $2,500 mortgage on the property and accrued arrears of interest.
In December 1951 Herbert voluntarily left home to live in Washington and was married there in 1952 to the defendant. The mother died in July 1954 and Herbert the following month. Defendant subsequently qualified as administratrix of his estate.

I.
We first consider plaintiff's appeal from the determination of the trial court precluding any enforcement of contribution from the defendant for such expenses of maintaining the real estate as taxes, insurance premiums, necessary repairs, etc., to the extent that they accrued subsequent to the deceased cotenant's departure from the home on December 1, 1951. There is no dispute as to the amounts or allowability of individual items, as such, but only as to the principle of disallowance because of accrual at a time when the decedent was not in possession. This ruling was expressly rested on the statement by the court in Mastbaum v. Mastbaum, 126 N.J. Eq. 366, 373 (Ch. 1939), to the effect that: "A tenant in common who is in sole possession of the common property, is under a duty to his co-tenants to preserve the property by making needful, ordinary *163 repairs, and paying taxes, mortgage interest and insurance premiums." Finding that plaintiff was "sole co-tenant in possession" after December 1, 1951, the trial court in the present case read the quoted language in Mastbaum literally to require the result that plaintiff was obliged to assume all the maintenance charges of the property during that period without any allowance in the final partition settlement by way of ratable contribution from her cotenant. We are constrained to the view that the holding in Mastbaum does not call for this result; that it is not supported by the applicable authorities considered as a whole; and that the equities require that defendant be held accountable out of her share of the proceeds of the partition sale for intestate's ratable share of the maintenance expenses accruing after, as well as prior to, December 1, 1951.
It will be convenient first to consider the general liability of one cotenant to another for a ratable share of maintenance expenses advanced by the latter for the preservation of the common estate; and then to determine whether such accountability is affected by the possession, use or enjoyment of the property by the cotenant seeking the accounting.
While there may have been some doubt whether the early common law, as a general rule, allowed affirmative recovery in favor of a cotenant who expended more than his ratable share either for necessary repairs, taxes or other carrying charges, he was clearly not without remedy. Historically, the basis of such relief was equitable, grounded in the general equitable principle of contribution between joint obligors. See 4 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 1418, p. 1071; 2 American Law of Property (1952), § 6.17, p. 74; 4 Kent's Comm. 370, 371 (1832); Freeman, Cotenancy and Partition (1874), § 322, p. 377. According to the latter authority, it was necessary for the plaintiff to show that he had "removed a common burthen from the shoulders of himself and the defendant, and that they are each benefitted by it." Ibid. But this did not mean recovery in all cases. It depended largely on the nature of the expenditure.
*164 In the case of removal of paramount liens and clouds on the title the disbursing tenant could not have affirmative recovery (except through the doctrine of subrogation if the defendant were personally liable on the underlying debt, Troy v. Protestant Episcopal Church, 174 Ala. 380, 56 So. 982 (Sup. Ct. 1911); 2 American Law of Property, op. cit., supra, § 617, p. 76; Annotation, 48 A.L.R.2d 1305, 1309 (1956)), since the lien might exceed the value of the property interest of the tenant sought to be held accountable, Freeman, op. cit., supra, § 263, pp. 320, 321. It is clear, however, that the cotenant discharging a lien obtained a lien of his own upon the property for the excess of the payment over his ratable share of the indebtedness, recoverable in an accounting for rents and profits or upon final adjustment between the parties in partition. Freeman and 2 American Law of Property, both ubi cit., supra.
As to necessary repairs or improvements, at common law there apparently was no affirmative relief by way of compensation for repairs already made, but only a writ (de reparatione facienda) to compel the other cotenant to join in the making of the repairs before they were undertaken. Woolston v. Pullen, 88 N.J. Eq. 35, 38 (Ch. 1917); Freeman, op. cit., supra, § 261, p. 317; 2 American Law of Property, op. cit., supra, § 618, p. 77 et seq. However, the cases uniformly allow claims for repairs to be set off in final accounting between the parties or in partition. Ibid. We need not consider here whether the amount allowable for improvements is to be based upon the actual sums expended or the increased value of the property, the distinction not having been argued. Compare 2 American Law of Property, op. cit., supra, § 6.18, pp. 82-84, Hall v. Piddock, 21 N.J. Eq. 311, 316 (Ch. 1871), with Ross v. Ross, 35 N.J. Super. 242 (Ch. Div. 1955). Nor was any question raised here as to the need for or extent of the repairs claimed. Expenditures by one cotenant for such carrying charges as taxes and interest on liens are also generally allowed as *165 part of any final accounting or in partition. See Annotation, 48 A.L.R. 586 (1927); Note, 32 Notre D. Lawyer 493 (1957).
The New Jersey cases are in accord with the general rules stated as to the right of contribution for proportionate shares of taxes, interest on mortgage, and necessary repairs in a final accounting or partition action. Buckelew v. Snedeker, 27 N.J. Eq. 82, 84 (Ch. 1876); Bien v. Buckholtz, 113 N.J. Eq. 85 (E. & A. 1933); Finley v. Keene, 136 N.J. Eq. 347 (Ch. 1945). In Roll v. Everett, 73 N.J. Eq. 697, 702 (E. & A. 1908), a cotenant who discharged a lien upon the common property was declared entitled to contribution from his cotenant and to a lien upon the latter's share as security. It is to be noted that, in Woolston v. Pullen, supra, our courts for the first time expressly declared the right of recovery for repairs and carrying charges to depend upon the nature of the action. It was there stated (88 N.J. Eq., at page 39) that while no action would lie at law for contribution of such expenses unless there had been a prior demand and refusal, equity would "under certain circumstances" compel contribution. The action was a partition suit and contribution was allowed as an incident of the settled principle of equitable jurisdiction in such matters that relief be accorded ex aequo et bono, in accordance with the court's own notions of general justice and equity between the parties (88 N.J. Eq., at page 40). See also Zanzonico v. Zanzonico, 124 N.J. Eq. 477, 479 (Ch. 1938). In Lach v. Weber, 123 N.J. Eq. 303, 307 (Ch. 1938), the court went so far as to declare that the right of contribution in favor of a cotenant discharging a lien or making necessary repairs upon the common property comprehends not only a lien for the expenditure but also a personal liability of the other cotenant.
In most of the cases cited the cotenant seeking contribution was in possession. It is thus clear that, on principle, the mere fact of possession by the cotenant making advances for the benefit of the common estate should not preclude reimbursement by contribution from the cotenants *166 sharing in the benefits by the preservation of the common property.
Quite another matter is presented by the question as to whether, assuming the right of contribution in general, there should be offset against the demand of the cotenant who has been in sole or partial possession of the property, the defendants being out of possession, the reasonable value of his use and occupation of the premises. This issue is not squarely raised by the parties herein, defendant not asserting a setoff against any contribution assessed against her for the value of plaintiff's use and occupation, but total absolution from maintenance expenses accrued after December 1, 1951 because decedent was not in occupation of the property during that period. But clarity in exposition of the reasons why we think the statement in the Mastbaum case, supra, relied upon by the trial court, does not support her position, requires a review of the general state of the law on the subject.
By the peculiar nature of cotenancy each cotenant's possessory rights theoretically extend to the entire premises, co-equal with the rights of his cotenants. Each has the right to utilize the entire property consistent with the right of the others to do the same, 4 Thompson, Real Property (1940), § 1908, p. 431. There thus developed in the early common law the concept that where one cotenant occupied the entire premises, unless so openly adversely to the claim of his cotenants as to constitute an ouster thereof, he was not accountable to the others for benefits derived, absent an agreement to pay for such occupancy. This applied whether the benefit received was in the form of rents from third persons, profits from the land, or the value of his use and occupation. Freeman, op. cit., supra, § 269, p. 327; 2 American Law of Property, op. cit., supra, § 6.14, p. 57.
The harshness of the common law rule was somewhat remedied by the statute, 4 Anne, c. 16, § 27 (1704), providing that a tenant in common actually receiving rents, issues and profits might be compelled to account for the excess over his proper share. This statute was widely *167 adopted in this country, and in New Jersey in 1794. Nixon's Digest (4th ed. 1868) 5, par. 3. See Izard v. Bodine, 11 N.J. Eq. 403, 404 (Ch. 1857); Lohmann v. Lohmann, 50 N.J. Super. 37 (App. Div. 1958); R.S. 2:38-3. Both in England and in America the statute was generally narrowly interpreted as applicable only in cases where the occupying cotenant had received rents from third persons or, in some jurisdictions, where he had depleted the capital value of the land by the nature of his use. Freeman, op. cit., supra, §§ 273, 274; 2 American Law of Property, op. cit., supra, § 6.14, pp. 59, 60; 2 Walsh, Commentaries on Law of Real Property (1947), § 128, pp. 50-53; 4 Powell, Real Property (1954), par. 604, p. 605; 1 Tiffany, Modern Law of Real Properly (1903), § 169, p. 392. In the absence of ouster, the occupying tenant is not in most jurisdictions affirmatively accountable for the value of his use and occupation, as such. Ibid.; Henderson v. Eason, 17 Q.B. 701, 117 Eng. Rep. 1451 (Ex. Ch. 1851); Annotation 27 A.L.R. 184, 190, et seq. (1923); see Weible, "Accountability of Cotenants," 29 Iowa L. Rev. 558, 560-561 (1944).
The New Jersey courts adopted the majority rule at least as early as 1857 in Izard v. Bodine, supra, where Chancellor Williamson announced that it was "well established" that "where one tenant in common occupies the whole estate, without claim on the part of his co-tenants to be admitted into possession, he is under no obligation to account  for he had a right to such occupancy" (11 N.J. Eq., at p. 404). The Izard case was actually concerned with the question as to what constituted an ouster by one of the cotenants of the others. Note the full discussion of ouster of cotenants in the very recent decision by this court in Lohmann v. Lohmann, supra. Ouster is not significant in the instant case, it being conceded that the decedent left the premises voluntarily and was free to resume possession at any time.
This review thus makes clear that by both the general and New Jersey rules there was no obligation by a cotenant in possession who was not excluding his cotenants to account *168 to them affirmatively for the value of his use and occupation. But it developed that when such a cotenant, in a general accounting between the parties or on partition, sought, under the authorities cited above, to enforce contribution by the others for their ratable share of maintenance expenses advanced by the cotenant in possession, many courts deemed it equitable that the occupying tenant give credit for the value of his use and occupation. Annotations, 136 A.L.R. 1022 (1942); 48 A.L.R.2d 1305, 1317, 1318 (1956); 51 A.L.R.2d 388, 454 (1957); 14 Am. Jur., Cotenancy, § 48, pp. 114-115; 86 C.J.S. Tenancy in Common § 69, p. 459; 2 American Law of Property, op. cit., supra, § 6.17, p. 76, n. 5; Weible, op. cit., supra (29 Iowa L. Rev., at p. 572); 2 Walsh, op. cit., supra, § 129, p. 59. This is probably the majority view. Contra: Bennett v. Bennett, 193 Misc. 553, 81 N.Y.S.2d 653 (Sup. Ct. 1948); Rainer v. Holmes, 272 Wis. 349, 75 N.W.2d 290 (Sup. Ct. 1956); McIllwain v. Bills, 206 Okl. 238, 242 P.2d 707, 709 (Sup. Ct. 1952); Kahnovsky v. Kahnovsky, 67 R.I. 208, 21 A.2d 569, 572 (Sup. Ct. 1941); see also In re Takis, 26 F.2d 970, 972 (2 Cir. 1928).
Some cases have gone so far as to deny the occupying cotenant a right of contribution for expenses on the "presumption" that the amount expended is offset by the rental value of the property. See Gordon v. McLemore, 237 Ala. 270, 186 So. 470, 474 (Sup. Ct. 1939), subsequently explained and probably modified in Fundaburk v. Cody, 261 Ala. 25, 72 So.2d 710, 717, 48 A.L.R.2d 1295 (Sup. Ct. 1954); Ward v. Pipkin, 181 Ark. 736, 27 S.W.2d 523 (Sup. Ct. 1930); Engle v. Terrell, 281 Ky. 88, 134 S.W.2d 980, 983 (Ct. App. 1939); Hackett v. Linch, 57 Wyo. 289, 116 P.2d 868, 871, 872 (Sup. Ct. 1941). Better reasoned authority, however, demonstrates that the presumption is not to be regarded as conclusive, or even as a true presumption in the procedural sense. In Victoria Copper Mining Co. v. Rich, 193 F. 314, 318 (6 Cir. 1911), involving a claim for contribution for taxes advanced by a cotenant, the court had occasion to say:
*169 "The duty of one tenant in common towards his cotenant, or his inability to compel contribution from his cotenant, must in the end rest upon the receipt of benefits, actual or presumed, by the tax-paying tenant equal to the amount of taxes paid. If, under claim of exclusive title, he is maintaining a possession adverse as against his cotenant, then the one in possession will be conclusively presumed to have received benefits equal to the maintenance; but, if his possession is not of such adverse character, he will not, in the absence of proof to the contrary, be presumed to have received benefits."
Of concordant implication as to the non-conclusiveness of any presumption of equality of benefits is Clute v. Clute, 197 N.Y. 439, 90 N.E. 988, 37 L.R.A., N.S., 146 (Ct. App. 1910). But compare, as to the burden of proof on the issue, Hackett v. Linch, supra.
It is frequently assumed that considerations of fairness and equity require the setoff of rental value. Weible, op. cit., supra (29 Iowa L. Rev., at pp. 572-573). But cf. Henry v. Steward, 363 Mo. 213, 250 S.W.2d 527 (Sup. Ct. 1952); Rainer v. Holmes, supra. Yet an appealing argument can be made for the other point of view in the ordinary case. First, we are assuming that the tenant not in possession is not being excluded and is free to enjoy possession at all times. Second, it would seem anomalous that one should be chargeable for rental value for occupying property which he owns, especially since, as is conceded, he is not liable therefor affirmatively. Third, payment of such charges as taxes, mortgage, interest and necessary repairs is essential to the maintenance of the capital value of the property, ordinarily inuring to the benefit of the other cotenants, so that the performance of that function on behalf of all the owners would seem a questionable basis for penalizing the cotenant in possession by subjecting him to a use charge for which he would otherwise not be accountable. See the Notre Dame Lawyer Note cited supra (32 Notre D. Lawyer, at page 496), as to the significance of the nature of the property, whether residential or commercial, in this connection. See also Lohmann v. Lohmann, supra (majority and dissenting opinions).
*170 There is no satisfactory overt consideration or determination of this precise problem in any previous New Jersey case. Two decisions may be read as impliedly against the allowance of an offset for use and occupation of residential property, there being no exclusion of the cotenant out of possession, even where that cotenant is required to contribute to maintenance expenses. White v. Smith, 70 N.J. Eq. 418 (Ch. 1906); Buckelew v. Snedeker, supra; cf. Barrell v. Barrell, 25 N.J. Eq. 173 (Ch. 1874). In Sailer v. Sailer, 41 N.J. Eq. 398, 402 (Ch. 1886), however, while taking pains to hold the occupying cotenant free from a claim for use and occupation in the accounting on partition, the court, without discussion or explanation, or citation of authority, disallowed contribution for taxes and repairs on the specific portion of the property occupied by the cotenant seeking reimbursement. This case must be assayed as authority in conjunction with the cognate ruling in Mastbaum v. Mastbaum, supra, discussed hereinafter.
We are thus brought to the specific consideration of whether Mastbaum v. Mastbaum, supra, dictates the conclusion of disallowance of contribution towards plaintiff's expenditures for maintenance during the period when defendant's intestate was out of possession, as held by the trial court. In the Mastbaum case the premises consisted of a two-family house. The defendant cotenants had occupied the second floor and rented out the first floor at $30 per month. On bill for partition the defendants presented an account indicating they had spent the rent they collected for repairs, insurance, taxes, etc., and sought to be discharged on that basis (126 N.J. Eq. at page 373). The opinion of the court does not indicate what precise position the complainant cotenants took as to this demand.
After a review and commentary upon the general principles declared in Izard v. Bodine, supra, the court held the defendants not accountable for the rental value of the apartment (not large enough to accommodate all the cotenants) they had occupied, as complainants had not wished to live there and efforts to rent it to others had been unsuccessful. *171 "Tenants in common are not required to let their property stand vacant under penalty of paying rent to their co-tenants" (126 N.J. Eq., at page 373). The court then went on to state the rule, quoted earlier in this opinion, concerning the duty of a tenant in common in sole possession to his cotenants to preserve the property by making necessary maintenance expenses, a duty said to rest "upon the receipt of benefits, actual or presumed, equal to the cost of preservation of the property" (ibid.), citing Victoria Copper Mining Co. v. Rich, supra. A tenant in sole possession of part of the property was declared under a like duty in respect to the part occupied (ibid.), the court citing Sailer v. Sailer, supra, and Rowden v. Murphy, 20 A. 379 (not off. rep., N.J. Ch. 1890), per Stevens, Adv. M. Defendants were then declared "by this rule" subject to one half of the expenses (plus the entirety of repairs solely benefiting their own apartment  a ruling which is questionable if the repairs enhanced the capital value of the property), but subject to the proviso that such charges not exceed an average of $30 per month, found by the court to be the rental value of the apartment occupied. While the court said nothing concerning the expenses in excess of the one half charged against defendants because of their occupation, there is no reason to suppose that these were not intended to be charged equally against both groups of cotenants; nor that the rents collected were not to be credited equally to both. Consequently the effect of the formula specified by the court depended, as a mathematical check will show, upon whether the total rental value of both apartments exceeded the total of operating expenses for the entire property. If so, the cotenant in possession was charged, in effect, something less than the rental value of his apartment, making significant the determination earlier in the opinion that the cotenant is not chargeable for his own use and occupation, as such. If, however, total expenses exceeded total rental value, the effect of the ruling is seen to have been the same as the rule referred to above as prevailing in most other jurisdictions, i.e., that in seeking contribution for maintenance expenses the cotenant will be charged as an *172 offset for the entirety of the rental value of his own occupation.
This litigation is not the appropriate framework for a definitive statement of all of the principles properly controlling the right of a cotenant to use property without charge or to be subjected to a charge therefor when seeking contribution from others for maintenance expenses. The application of the rules is peculiarly dependent upon the facts and equities of the particular case. It is sufficient for present purposes to show that the Mastbaum case does not have the dispositive sweep as to the present issue claimed for it by defendant. In any view of that decision it cannot be taken as authority for regarding the possession of a cotenant as conclusively equal in value to the total maintenance expenditures of the occupied property and therefore automatically precluding such cotenant from seeking contribution from others for such expenditures. Both the formula employed in the opinion and the citation therein of such supporting cases as Clute v. Clute, supra, discussed in this connection above, buttress the limitation of any charge against the occupying cotenant to actual rental value. And in support of the thesis that the burden of proving the amount of such an offset belongs to the party claiming it (the cotenant out of possession) stands not only the statement from the Victoria Copper Mining case cited in Mastbaum, and quoted hereinabove, but the congruent philosophy of the basic rule that ordinarily the cotenant who is not excluding others is not accountable for use and occupation. Cf. Finley v. Keene, 136 N.J. Eq. 347 (Ch. 1945).
Two obvious difficulties stand in the way of any ready application of the Mastbaum case, were we to accept it as authoritative, to the case at hand. First, there is no proof of the rental value of the property or of any portion thereof which plaintiff may have occupied. Second, there is no indication of just which part of the house she did occupy. We do not think it fair to conclude that plaintiff was in sole possession of the entire property. Her mother's apparently co-equal occupancy was as much attributable to *173 the defendant's intestate as to the plaintiff. The mother had assigned the leasehold to both of them, and she was obviously being cared for in the property on behalf of both of them, although plaintiff was saddled with the entire burden, physical as well as financial, after December 1, 1951 (and most of it previously as well).
But we think the dispositive consideration here controlling is the pervading principle in this kind of matter, particularly applicable where there is a partition in equity, that the allocation of charges and credits as between the cotenants be governed by the basic justice and fairness of the situation. Woolston v. Pullen, supra (the court "administers its relief ex aequo et bono, according to its own notions of general justice, and equity between the parties," 88 N.J. Eq., at page 40). Note the stress on the factor as to whether the occupying tenant has "done equity" in Rainer v. Holmes, supra (75 N.W.2d, at page 292), involving a factual situation and legal problem very similar to those before us here. Cf. Michalski v. Michalski, 50 N.J. Super. 454 (App. Div. 1958). In the present case plaintiff, in defendant's absence, was not only meeting his as well as her own moral obligation to maintain and care for their mother in the property, a fact which he acknowledged emphatically in a letter to the mother and in a memorandum (referred to more particularly in II, infra), but she was contributing her personal services in the seasonal occupation of renting rooms in the property in order to derive income to help meet maintenance expenses for their common benefit. She even slept on a couch in the living room so that her own room might be rented out during the summer rental season. While the value of such personal services is not a subject of recovery per se as between co-tenants, see Fort v. Gilbert, 116 N.J. Eq. 219 (Ch. 1934), Switzer v. Switzer, 57 N.J. Eq. 421, 427 (Ch. 1899), yet their rendition, in all the circumstances of this case, contributes materially to a total factual picture which would make it grievously inequitable to require plaintiff to offset against the just and ratable contribution by defendant toward *174 the expenses of maintenance of the property after December 1, 1951 an allowance for the value of her incidental personal use and occupation of an indeterminate portion of the property while serving her cotenant's interests so substantially. Rainer v. Holmes, supra.
On this branch of the case, accordingly, plaintiff will be entitled, on the remand, to the same kind of credit and lien for maintenance expenses less rentals collected, for the period subsequent to December 1, 1951, as is awarded by the judgment under appeal for the period prior to that date.

II.
We deal now with defendant's appeal from the adjudication that there was an agreement between plaintiff and her brother equally to share the expenses of personal maintenance of the mother over the period of years subsequent to 1944. The pretrial order and the case as tried and argued make it clear that the contention is that there was an express agreement to that effect. The trial court held the agreement was made in 1944 and that it was supported by the mother's conveyance of the property to her children.
We find no evidence in the appendix to either brief which would support the hypothesis of the existence of an agreement of the kind asserted. Plaintiff was, we appreciate, precluded from giving testimony concerning such an agreement with the decedent by the Evidence Act, N.J.S. 2A:81-2, but this fact cannot excuse the burden of adducing proof sufficient to support a finding in the affirmative on the issue. Cf. Appelget v. Van Hise, 44 N.J. Super. 507, 515, 528 (Ch. Div. 1957).
It might be noted that under the trial finding that the conveyance from the mother constituted the consideration for Herbert's alleged undertaking, the logical promisee would be the mother, not plaintiff. Nor does plaintiff have a claim (she does not assert one) on the theory of subrogation to an obligation owing from Herbert to the mother. See Restatement, Restitution, § 162, comment (b).
*175 But more basically, apart from the question as to enforceability by one other than a promisee, there is an absence of evidence justifying a finding that the plaintiff and the decedent at any time exchanged promises, expressly or impliedly, to support the mother in equal pecuniary proportions. Plaintiff relies entirely on two writings by the decedent, one an undated letter to the mother written from Washington, the other a memorandum, "To Whom it May Concern," dated February 7, 1952. The letter generally berated the mother for what the son deemed unjustified complaints of various kinds, including dissatisfaction with plaintiff. In the course of it Herbert stated: "I myself owes [sic] Verda [plaintiff] plenty and one of these days I am going to pay her back  when I get back on my feet * * *." It is more probable that this is in reference to the moneys advanced him by plaintiff, or concerning the real estate expenditures, than that it means an otherwise entirely unevidenced obligation to pay half of what plaintiff was disbursing in support of the mother.
The memorandum was written seven years after the assignment of the leasehold, apparently in contemplation of an impending incompetency of the mother. It recites that plaintiff has paid off the mortgage and met all expenses "on the house"; that she has provided their mother with all her needs; that title to the property was turned over to him and his sister when she was in possession of all her faculties. It concludes: "Both my sister and I are agreed that our mother should be cared for as long as she lives  and provided with everything she needs up to our abilities" (emphasis supplied). This language does not import a contractual undertaking either in 1944 or at any other time between the brother and sister that each would pay one-half of the expense of maintaining the mother. There seems to be no dispute but that the decedent never had any "ability" to defray any part of the expense of maintaining the mother but that plaintiff had the "ability" to meet it in entirety, and did.
*176 The attendant circumstances further repel the likelihood of such an agreement in 1944. At the time decedent was in or about to go into the armed forces. His financial prospects were nil. It is incredible that he would have bound himself to pay one-half of the substantial expense of caring for the mother or that plaintiff would have expected him to. She was even being called upon to advance money to the brother for his personal necessities. Her expenditures and services on behalf of the mother far more credibly bespeak the natural filial obligation of a daughter, spurred perhaps by her expectancy in the real estate transferred to her and her brother by the mother in 1944. There was, in short, no contractual expectation of compensation from the brother. Cf. Disbrow v. Durand, 54 N.J.L. 343 (E. & A. 1892).
This branch of the judgment will have to be reversed.

III.
The last question for determination is the power of the trial court to have awarded counsel fees out of the proceeds of the sale of the property. Plaintiff argues that there was no fund in court, within R.R. 4:55-7(b). We think the matter is controlled by Katz v. Farber, 4 N.J. 333 (1950), holding that there is a fund in court where the moneys are actually deposited in court and are the subject of the pending litigation (at page 344). The judgment in the present matter calls for the net proceeds of the sale in partition to be paid into court and to be disbursed by the clerk pursuant to the provisions of the judgment. Thus the fund made subject to counsel fees was in court, and that fund was the subject of the litigation insofar as concerned the claims for reimbursement by way of contribution toward maintenance expenses asserted by plaintiff. Technically, therefore, there was a fund in court, under Katz v. Farber, supra.
No issue is raised concerning the propriety of the award, apart from the matter of the inhibition of the practice rule, *177 and we therefore neither consider it nor imply any approval or disapproval.
Reversed and remanded, further to be proceeded with consistently with this opinion. No costs.