775 A.2d 163 (2001)
Manuel and Flora ESTEVES, Plaintiffs-Respondents,
v.
Joao ESTEVES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 1, 2001.
Decided June 14, 2001.
William E. Agrait, Newark, for appellant.
Richard N. Zuvich, Colonia, for respondents.
*164 Before Judges SKILLMAN, CONLEY and LESEMANN.
The opinion of the court was delivered by LESEMANN, J.A.D.
This appeal deals with the proper division of the proceeds from the sale of a one-family house held by a tenancy in common, with plaintiffs, the parents of defendant owning one-half of the house and defendant owning the other half.
The trial court held that plaintiffs, who had occupied the house by themselves for approximately eighteen years before it was sold, and had paid all of the expenses relating to the house during that period, were entitled to reimbursement from defendant for one-half of the sums they had paid, without any offset for the value of their occupancy. The net effect of that ruling amounted to a determination that plaintiffs were permitted to occupy the premises "rent free" for approximately eighteen years, while they paid one-half of the costs attributable to the house and defendant paid the other half. The trial court found that such a result was compelled by applicable law. We disagree, and conclude that when plaintiffs sought reimbursement from defendant for one-half of the costs of occupying and maintaining the premises, plaintiffs were required to allow defendant credit for the reasonable value of their occupancy of the house. Accordingly we reverse.
The case involves an unhappy family schism, but the facts, as found by the trial court and not disputed on appeal, are uncomplicated. In December 1980, plaintiffs Manuel and Flora Esteves, together with their son Joao Esteves, bought a house. They took title as tenants in common, with Manuel and Flora owning a one-half interest and Joao owning the other one-half. The purchase price was $34,500. Manuel and Flora paid $10,000 in cash as did Joao, and the parties took a mortgage loan for the remaining $14,500. They then moved into the house, and Joao undertook a considerable amount of work involving repairs and improvements while he lived there with his parents for somewhere between three months and eighteen months after closing. Joao then moved out and for approximately the next eighteen years, until the house was sold on February 26, 1998, Manuel and Flora lived there by themselves. At no time did they rent out any portion of the house.
Sale of the house produced net proceeds of $114,453.18. With the parties unable to agree on distribution of the proceeds, they agreed to each take $10,000 and deposit the remaining $94,453.18 in escrow. They then proceeded to trial, after which the trial court made the following findings and conclusions.
The court found that Manuel and Flora had paid out $17,336 in mortgage payments, including principal and interest; $14,353 for capital expenses; $21,599 for real estate taxes; $3,971 for sewer charges; and $4,633 for homeowners insurance. Those amounts totaled $61,892, and the court found that Joao was obligated to reimburse his parents for one-half that amount. However, the court also found that Joao had supplied labor with a value of $2,000 more than any labor expended by Manuel and Flora, and thus Joao was entitled to a credit for that amount. On the critical issue of credit for the value of plaintiffs' occupancy of the house, the court said this:
I conclude there being no ouster of the defendant by the plaintiffs that there is no entitlement to the equivalent rent or rental value of the premises where the plaintiffs lived. The defendant could have continued to live there if he wanted to; he chose not to. And the law is *165 clear that that being the case, he's notthere being no ouster, he's not entitled to anything for the rental value or what the rental could have been to the plaintiffs.
Over the years, there have been varying statements by our courts as to the rights and obligations of tenants in common respecting payment for maintenance of the parties' property and their rights and obligations respecting occupancy thereof. See, e.g., Baker v. Drabik, 224 N.J.Super. 603, 541 A.2d 229 (App.Div.1988); Asante v. Abban, 237 N.J.Super. 495, 568 A.2d 146 (Law Div.1989); and the most frequently cited decision, Mastbaum v. Mastbaum, 126 N.J. Eq. 366, 9 A.2d 51 (Ch.1939). While those decisions may not always have been consistent, in Baird v. Moore, 50 N.J.Super. 156, 141 A.2d 324 (App.Div.1958), this court, in a comprehensive, scholarly opinion by Judge Conford set out what we conceive to be the most appropriate, fair and practical rules to resolve such disputes. Those principles can be summarized as follows.[1]
First, as a general proposition, on a sale of commonly owned property, an owner who has paid less than his pro-rata share of operating and maintenance expenses of the property, must account to co-owner who has contributed more than his pro-rata share, and that is true even if the former had been out of possession and the latter in possession of the property.
Second, the fact that one tenant in common occupies the property and the other does not, imposes no obligation on the former to make any contribution to the latter. All tenants in common have a right to occupy all of the property and if one chooses not to do so, that does not give him the right to impose an "occupancy" charge on the other.
Third, notwithstanding those general rules, when on a final accounting following sale, the tenant who had been in sole possession of the property demands contribution toward operating and maintenance expenses from his co-owner, fairness and equity dictate that the one seeking that contribution allow a corresponding credit for the value of his sole occupancy of the premises. To reject such a credit and nonetheless require a contribution to operating and maintenance expenses from someone who (like the defendant here) had enjoyed none of the benefits of occupancy would be patently unfair.
Finally, this court held in Baird, that the party seeking the credit for the other's occupancy of the property has the burden of demonstrating the "actual rental value" of the property enjoyed by the occupying co-tenant (id. at 172, 141 A.2d 324).[2]
*166 We believe the principles of Baird are sound and should be applied here. They support the trial court's conclusions as to defendant's obligation to contribute one-half of the $61,892 expended by his parents respecting the house they all owned. However, against that obligation, the court should offset a credit for the reasonable value of the occupancy enjoyed by the parents over the approximately eighteen years while they, and not their son, occupied the property. The obligation to present evidence of that value, which would normally be represented by rental value of the property, rests on the defendant. Although no such proof was presented at the prior trial, the uncertainty of the law in this area satisfies us that it would be unreasonable to deprive the defendant of the opportunity to do so now. Accordingly, the matter is reversed and remanded to the trial court for further proceedings at which the defendant shall have an opportunity to present evidence related to the value of the plaintiffs' sole occupancy of the property. We do not retain jurisdiction.
NOTES
[1] We find it unnecessary to restate or summarize Judge Conford's discussion of the cases that preceded Baird, nor to rehash the arguments, many of them historical, for and against requiring a tenant out of possession to contribute to costs respecting the property, or requiring a tenant in possession to allow a credit for the value of that possession. For present purposes, it is sufficient to summarize, and then apply, the principles adopted in Baird and make clear our endorsement thereof.
[2] The court in Baird also said that in any final accounting between the co-tenants, equitable considerations which would weigh against a simple mathematical balancing should be considered and could have an effect. Thus, e.g., in Baird, where the co-tenants were brother and sister and the sister had expended extraordinary efforts to maintain the property for their mother and care for their mother in the property, those efforts were to be recognized in considering what if any occupancy credit should be imposed against the daughter. We see no such extraordinary equitable considerations here, but in the hearing which must follow the remand of this case, either party may submit evidence thereof for consideration by the trial court.