50 N.J. Super. 454 (1958)
142 A.2d 645
MARION MICHALSKI, PLAINTIFF-RESPONDENT,
v.
ALEXANDRA OTTO MICHALSKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1958.
Decided April 21, 1958.
*456 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Walter D. Van Riper argued the cause for defendant-appellant (Messrs. Van Riper & Belmont, attorneys).
Mr. Frank A. Palmieri argued the cause for plaintiff-respondent.
The opinion of the court was delivered by FREUND, J.A.D.
Defendant appeals from a judgment of the Superior Court, Chancery Division, granting plaintiff's demand that certain properties owned by the parties as tenants in common be sold in partition.
Plaintiff and defendant are husband and wife and are equal owners, as tenants in common, of the three properties with which we are concerned. The title to the properties was originally in the name of the defendant, and on July 1, 1949 they were conveyed by the defendant through an intermediary to the plaintiff and defendant as tenants in common. The validity of the conveyance to the plaintiff and defendant was established in Michalski v. Michalski, 20 N.J. Super. 258 (Ch. Div. 1952) where the marital discord between the parties is defined.
*457 Contemporaneously with the conveyance the parties executed the written agreement which forms the basis for the instant suit. It provided:
"AGREEMENT made this 1st day of July, 1949, between MARION MICHALSKI and ALEXANDRA OTTO MICHALSKI, husband and wife.
WHEREAS, certain domestic difficulties have arisen between the parties; and whereas, by deed bearing even date herewith and about to be recorded, said Alexandra Otto Michalski has conveyed to said Marion Michalski a one-half interest in and to certain properties known as 26 Pulaski Street, Bloomfield, 190-192 North Park Street, East Orange, 571 Liberty Street, Orange, and 123 Valley Road, West Orange, New Jersey, to the end that the same may be held by them as tenants in common; and whereas, said parties desire to make certain agreements in respect to the premises as hereinafter stated:
In consideration of the premises, it is hereby agreed as follows:
1. Each party shall treat the other with kindness and respect.
2. Neither party shall transfer or mortgage his or her interest in and to said properties without the written consent of the other party, nor shall do or permit anything in respect thereto to defeat the common tenancy of said properties by said parties.
3. Said Alexandra Otto Michalski shall, either personally or by said Marion Michalski as her agent, collect and take all the rents of said properties and pay all the taxes, insurance premiums, repairs and other charges thereon and maintain the same so long as she shall live, except that in the event said Marion Michalski becomes unable to pursue his usual business and engage in gainful occupation, one-half of the net rents shall be paid to him.
4. In respect to the property known as No. 123 Valley Road, West Orange, New Jersey, it is understood and agreed that the parties propose to make this their home for occupancy by themselves, and by Jane Otto and Marianne Otto, daughters of said Alexandra Otto Michalski, and by Wladyslawa Michalski, mother of said Marion Michalski, and that all and each of them shall have the right to occupy said property as their home so long as they desire. Said Marion Michalski agrees to make a Will devising his interest in said property to said Alexandra Otto Michalski, her heirs and assigns, subject to the right of his mother to occupy the same as aforesaid; and said Alexandra Otto Michalski agrees to make a Will devising her interest in said property to her children, subject to the right of said Marion Michalski and his mother to occupy the same as aforesaid; and upon the death of either party, the occupants of said property shall pay the taxes, insurance premiums, repairs and other charges on said property in equal shares during their respective occupancy thereof.
IN WITNESS WHEREOF we hereunto set our hands and seals the day and year first above written.
 /s/ Marion Michalski (L.S.)
 /s/ Alexandra Otto Michalski (L.S.)"
*458 Of the original four properties mentioned in the agreement, the present appeal concerns only three, the fourth, at 123 Valley Road, West Orange, not being included in plaintiff's demand for partition.
As part of the record the parties stipulated the following facts which briefly describe the circumstances and living conditions of both plaintiff and defendant. At the time of the July 1, 1949 conveyance the plaintiff and defendant lived together as husband and wife in the common domicile on Liberty Street, Orange, one of the properties involved herein. Although their agreement contemplated that they were to live together in the property on Valley Road, the parties subsequently separated on February 6, 1952 and since then have continued to live separately. Plaintiff for the past three years has lived at 190 North Park Street, East Orange. Defendant, her daughters by a prior marriage, and the mother of the plaintiff lived at the Valley Road address, and, with the exception of the plaintiff's mother who died in September 1956, all have continued to live there. Plaintiff is now 69 years of age and his wife, the defendant, is 83 years of age.
The record further discloses that when the properties were conveyed to the plaintiff and defendant, as cotenants, and the agreement of July 1, 1949 executed, the marital relationship was harmonious. About a year after their agreement that "each party shall treat the other with kindness and respect," the defendant caused the plaintiff to be arrested on a complaint of assault and battery. He was indicted and acquitted by a jury. In February 1951 a similar complaint was made by the plaintiff against his wife, but it was withdrawn on the understanding that Mr. Michalski would leave the home, that he would collect the rents and divide the net profits. Several days later, on February 27, 1951, the defendant instituted suit to set aside the conveyances by which plaintiff obtained his interest, on the grounds that it was made under duress and without valid consideration. It was decided adversely to defendant in the case cited above. (20 N.J. Super. at page 258). In addition to the mentioned *459 litigation between the parties, Mrs. Michalski in July 1952 filed a complaint to restrain her husband from collecting the rents and the matter of rents having been disposed of in the prior suit, the action was dismissed on the grounds of res judicata. In the original action Mr. Michalski was permitted to file a supplemental counterclaim seeking to recover one-half of the net rents. After a hearing, an amended judgment was entered on March 26, 1954 wherein it was ordered that Mrs. Michalski account to her husband for one-half of the net rents from and after February 1, 1954. Subsequently, he sought to have Mrs. Michalski held in contempt for her failure to obey the order to account. After several hearings Mrs. Michalski was ordered to restate her account for certain periods of time, keep proper records, and account in accordance with the order of the court. There has been additional litigation between the parties since. Suffice to say, the marital relationship has since 1949 been most discordant and distressing.
In the present partition action the defendant raises as a defense paragraph 2 of the agreement set forth above, which she claims effectively prohibits partition during the lifetime of both parties or at least during the period of the life of the shorter lived of the parties. The plaintiff countered on this issue by saying that paragraph 2 does not prohibit partition; that if it does, it is an unreasonable restraint on alienation and is invalid; the contract cannot now be relied upon by the defendant because she has breached it in several respects; and lastly, change of circumstances has made the present enforcement of the contract unfair to the plaintiff. The trial judge determined that the plaintiff was entitled to partition as a matter of right for the reason that paragraph 2 did not bar partition, and, if it did, it would be an unreasonable restraint on alienation lacking a definite time period. He declined to pass on the questions of whether the defendant had breached the agreement and whether the change of circumstances had made enforcement of the agreement unrealistic.
*460 The trial judge in ruling that the agreement did not bar partition relied on the language in Drachenberg v. Drachenberg, 142 N.J. Eq. 127, 134 (E. & A. 1948), that "[t]he right of partition between co-tenants is an absolute right which should not be denied in the absence of an explicit agreement not to resort to partition * * *." He further held that this agreement did not "expressly and with definiteness and certainty bar partition" and should therefore not be given that effect. The agreement, if construed to deny partition, was held "unreasonable and unenforceable and against public policy" even if interpreted to be a bar operative only for the parties' joint lives.
It is well-established principle that the right of partition between cotenants is an absolute right. Drachenberg v. Drachenberg, supra (142 N.J. Eq. at page 134); Bentley v. Long Dock Company, 14 N.J. Eq. 480, 489 (Ch. 1862); Pentek v. Pentek, 117 N.J. Eq. 292 (Ch. 1934); Wujciak v. Wujciak, 140 N.J. Eq. 487 (Ch. 1947). Such right may, however, be subject to an agreement to refrain from partition, and such agreement, to be valid, must be reasonable. Yglesias v. Dewey, 60 N.J. Eq. 62 (Ch. 1900); Roberts v. Jones, 307 Mass. 504, 30 N.E.2d 392, 132 A.L.R. 663 (Sup. Jud. Ct. 1940); 2 American Law of Real Property (1952), § 6.26, p. 116; 40 Am. Jur., Partition, § 5, p. 5; Annotation, 132 A.L.R. 666 (1941).
In the Drachenberg case, supra, the five children of Alvine Drachenberg, who died intestate, became seized of her real estate as cotenants. Of these children Alvine was a minor, and Gottlieb in ill health. In order that these two might have a home, the four adult children executed a written agreement that Alvine, Gottlieb and Adolph, another of the children, should live in an apartment in one of the premises, without the payment of rent, in consideration of which Adolph would manage all the properties, collect the rents, pay the carrying charges, and account to his cotenants. The agreement further provided that the properties inherited from their mother would not be sold, mortgaged or otherwise disposed of unless by unanimous consent. Gottlieb, Alvine *461 and Adolph actually entered into possession of the apartment. Adolph managed the properties until he entered military service, at which time Alvine, the infant, assumed the management and collection of rents. Later Adolph returned and resumed management.
Albert, another of the cotenants, filed a complaint seeking an accounting of the management of the properties, and, by an amended complaint, sought to have the agreement declared void and unenforceable as an unreasonable restraint on alienation, because uncertain in terms and conditions; to have an accounting of the rents, and to have the properties physically partitioned or sold and the proceeds of the sale divided among the five cotenants. The court had before it inter alia for determination the enforceability of that part of the agreement denying partition.
The Court of Errors and Appeals adopted the Chancery opinion which held that the agreement was not a bar to the sale of the property in the partition proceedings. Without setting out the actual agreement, the trial court held:
"3. The purpose of the agreement was to provide a home in part of the property for Adolph, Gottlieb and Alvine. For Adolph as compensation for managing the property but he is no longer performing that service. For Alvine because she was a minor at the time but is now twenty-three years of age and employed. For Gottlieb because he was then somewhat of an invalid but the evidence shows he is competent and is employed. He is thirty-two years of age and considering his normal expectancy of life he may claim a right of use and occupancy for many years yet to come." (142 N.J. Eq. at page 130 et seq.)
The agreement was further unenforceable because:
"The agreement was breached by the failure of Adolph and Alvine to account to complainant for his share of net rents, in which breach the cotenants Martha and Gottlieb concurred, thus presenting an impelling reason why the agreement should now be regarded as of no binding effect on complainant." (142 N.J. Eq. at page 133)
Additionally, the vice-chancellor stated that the agreement purported to bind a surviving spouse or children, then unborn, of a deceased cotenant, and, by thus prolonging the *462 operation of the agreement, might violate the rule against perpetuities.
The court went on to say:
"The right of partition between co-tenants is an absolute right which should not be denied in the absence of an explicit agreement not to resort to partition * * *." (Emphasis added.)
We consider the last quotation as obiter dicta. The true basis of the decision in Drachenberg in allowing partition by sale was the changed circumstances of the respective parties, the breach of the obligation to account for the net rents, and the fact that the agreement was for an unreasonable length of time, coupled with the fact that it was not binding on the infant cotenant  since she was not a party to the agreement. See Drachenberg v. Drachenberg, 4 N.J. Super. 510, 514 (App. Div. 1949).
Although the first Drachenberg case, supra (142 N.J. Eq. 127) appears to enunciate a rule requiring the actual use of the word "partition" in any agreement purporting to prohibit partition, the weight of authority is opposed to such a view. Rosenberg v. Rosenberg, 413 Ill. 343, 108 N.E.2d 766 (Sup. Ct. 1952); Roberts v. Jones, supra; 2 American Law of Real Property (1952), § 6.26, p. 116; 4 Powell, Real Property (1954), § 611, p. 626; 40 Am. Jur., Partition, § 7, p. 7; 68 C.J.S. Partition § 44, p. 67 (1950); Annotation, 132 A.L.R. 666, 670 (1941). We conclude that if the intention is sufficiently manifest from the language used, the court will hold that the parties may effectively bind themselves not to partition, even without express use of the word.
In addition to the requirement of a clear manifestation of intent, the rule has become established that the restraint must not be fixed for an unreasonable time. Drachenberg v. Drachenberg, supra (142 N.J. Eq. 127); Yglesias v. Dewey, supra; Rosenberg v. Rosenberg, supra; Roberts v. Jones, supra; 40 Am. Jur., Partition, § 5, p. 6, n. 2; 68 C.J.S. Partition § 44, p. 68, note 48; 6 American Law *463 of Real Property (1952), § 26.74, p. 518; Simes, Future Interests (1951), § 105, pp. 356-357.
In the Yglesias case, supra, Vice-Chancellor Pitney held that a contract prohibiting partition for a period of five years was valid and enforceable as a bar to a partition action. In the Drachenberg case, supra, the court stated that it considered the limitation in restraint of alienation unreasonable as there was "no time limit fixed for the operation of the agreement * * *." However, it is significant that in the same paragraph (142 N.J. Eq. at page 133) the vice-chancellor construed the potential duration of the restraint on partition as being greater than the period measured by the rule against perpetuities.
Our examination of the authorities indicates no firmly settled rule as to what constitutes a reasonable time for an agreement of cotenants not to partition. See Restatement, Property, § 173(c), p. 670, § 412, p. 2440; 6 American Law of Real Property (1952), § 26.74, p. 518; Simes, op. cit., supra, § 105, p. 357; cf. Roberts v. Jones, supra. In the present case we are required to go no further than to hold that with persons of the advanced age of these parties an agreement not to partition until one of them should die (as we interpret this agreement, infra) is not unreasonable.
It remains, then, to consider the application of these principles to the provision in the instant agreement. To define the problem, we repeat paragraph 2 of the agreement:
"2. Neither party shall transfer or mortgage his or her interest in and to said properties without the written consent of the other party, nor shall do or permit anything in respect thereto to defeat the common tenancy of said properties by said parties." (Emphasis added.)
The apparent intention of the parties is certain. The paragraph not only prohibits sale ("transfer") or mortgage, but also directs that nothing else should be done "to defeat the common tenancy." It is clear to us that the common tenancy referred to is that of the two parties as individuals. That partition would defeat such common tenancy is obvious. Further indication of this construction may be had from a *464 reading of the entire agreement. The conveyance of the properties and the formulation of the contract was the culmination of the parties' efforts to restore domestic tranquillity. They were to have a common domicile in one of the properties and partition would certainly defeat this expressed objective. The language used by the draftsman of the agreement was lucid and admits of no other interpretation than that it is a prohibition of compulsory partition, or any other alienation during the joint lifetime of "said parties."
We have not overlooked the possibility that since the contractual provision not only prohibits partition, but also sale or incumbrance of the interest of either party without the consent of the other, it may be attacked as an unreasonable restraint of alienation. See 6 American Law of Property, op. cit., supra, § 26.77, p. 522. The parties not having raised or argued the point, however, we do not decide it. Moreover, the question will become academic in view of our ultimate disposition of the appeal. R.R. 1:7-1(c).
Giving consideration to the duration of the instant restraint, it is to be observed that the quoted language of the agreement does not directly state the length of time the restraint is to be effective. However, the wording of the provision does indicate that it purports to bind only "said parties." The trial judge in his opinion stated that, as suggested by the defendant, the prohibition might be construed to last "during their respective lifetimes," or until the demise of one of the parties. Further, it could be contended that it is without limitation and he concluded that "[e]ach of the three possible interpretations represents an unreasonable period."
In our view the provision, standing alone, purporting to prevent sale, mortgage or partition (as construed by us) by "said parties," could only have lasted for a period of time no longer than a life in being, i.e., until the death of the first of the parties. We therefore reach the conclusion that, particularly having regard to the advanced age of the parties, the restraint upon partition here would not last for longer than a reasonable time.
*465 Further, construing the agreement in its entirety, it is obvious that the intent of the parties was not to bind the heirs of either one, but rather to maintain and encourage marital harmony through ensuring financial security and peace of mind by providing against division of the property. That objective it was anticipated would have been fulfilled upon the demise of either. Indeed, paragraph 4 obligating the plaintiff to devise his interest in the Valley Road property to the defendant, her heirs and assigns, points directly to the conclusion that restraint of partition was to terminate, at least as to this property, upon the death of one of the parties. Thus the restraint on partition was to last for the shorter of the two lives.
Without considering the question of whether the restraint on sale coupled with the reasonable restraint on partition makes the entire provision void, we have concluded that the provision is a valid restraint on compulsory partition for the period of time measured by the death of the first cotenant. In this we differ from the trial court.
However, two alternative reasons were advanced below by the plaintiff, and urged here, for the view that the prohibition against partition should not be enforced; that there has been a change in circumstances of the parties since the inception of the agreement so material as to have frustrated the purposes of the restraint, and that the defendant, having breached the agreement, may not now avail herself of its benefits. Although evidence was presented on these issues, the trial judge, as noted, did not rule on these points, but rested his determination in favor of plaintiff on his construction of the contract.
We have carefully reviewed the record and it is our opinion that since the circumstances of the parties upon the basis of which the agreement was made in 1949 have materially changed since that time, we should decline to enforce the restraint provision against the plaintiff to partition the properties held in common. Drachenberg v. Drachenberg, supra (142 N.J. Eq. at page 131).
*466 Partition is inherently an equitable action, 2 American Law of Real Property (1952), § 6.21, p. 94 et seq.; 4 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 1387, p. 1015 et seq., and hence general equitable principles should govern our determination. Where the defendant seeks to defeat plaintiff's right to partition, which is ordinarily an absolute right, relying upon such a contractual provision as the one here entered into, the defendant's responsibility is to establish that enforcement of the partition provision would be fair and equitable. The situation is not unlike one where, because of changed circumstances, equity will not enforce the provisions of a covenant creating an equitable servitude. Cf. Welitoff v. Kohl, 105 N.J. Eq. 181, 186, 66 A.L.R. 1317 (E. & A. 1929); Leasehold Estates, Inc., v. Fulbro Holding Co., 47 N.J. Super. 534, 564 (App. Div. 1957); 2 American Law of Real Property (1952), § 9.39, p. 444; 4 Pomeroy, op. cit., supra, § 1295, p. 855.
Further, as is stated in Pomeroy, supra, the enforcement of such covenants is not an absolute right, but is controlled by the same equitable principles governing relief of specific performance of contracts. The following rule is particularly appropriate:
"The contract and the situation of the parties must be such that the remedy of specific performance will not be harsh or oppressive. This rule generally operates in favor of defendants; but may be invoked by a plaintiff when a defendant demands the remedy by counter-claim or cross-complaint. The oppression or hardship may result from unconscionable provisions of the contract itself; or it may result from the situation of the parties, unconnected with the terms of the contract or with the circumstances of its negotiation and execution: that is, from external facts or events or circumstances which control or affect the situation of the defendant." (Emphasis added.) Pomeroy, op. cit., supra, § 1405a, p. 1944.
See also Migel, Inc., v. Bachofen, 96 N.J. Eq. 608, 611-612 (E. & A. 1924); Panco v. Rogers, 19 N.J. Super. 12, 19-20 (Ch. Div. 1952); 2 Story's Equity Jurisprudence (14th ed. 1918), § 1027, p. 408.
Here the facts clearly establish that it would be manifestly unjust to enforce the agreement in bar of plaintiff's *467 partition action. The parties have not lived together since 1951, nor have they jointly occupied the Valley Road premises as contemplated by their agreement. They have been continuously involved in litigation, both civil and criminal, since 1951. The plaintiff, aged 69 years, has become physically disabled and by a judgment in prior litigation he was awarded one-half of the net rents in the mentioned properties as of February 1, 1954. Obviously the circumstances have so changed that it would be inequitable to deny the partition. The intent of the parties has been entirely destroyed. Drachenberg v. Drachenberg, supra.
There was discussion at the argument concerning the effect of any determination as to whose fault it was that plaintiff ceased to reside with the defendant. We do not believe this issue has to be resolved. We are of the opinion that the evidence of the entire history of this couple and of the litigation indicates fault may have been partially in each.
The general circumstances and conditions affecting the relationship are undoubtedly the result of actions of both parties and they are such as to make totally inappropriate the continued enforcement of the bar of partition.
The judgment directing partition of the three properties is therefore affirmed.