HOWARD C. NEWMAN, PLAINTIFF-RESPONDENT, v. ARTHUR D. CHASE AND DOROTHY A. CHASE, DEFENDANTS-APPELLANTS.

Argued November 3, 1975—Decided May 18, 1976.

*Mr. Jonathan Kohn* argued the cause for defendants-appellants (*Messrs. Rothbard and Lewis,* attorneys; *Mr. Kohn,* on the brief).

*Mr. Russell H. Hulsizer* argued the cause for plaintiff-respondent.

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiff, Howard C. Newman, purchased from the trustee in bankruptcy of defendant, Arthur D.

Chase, all of the latter's interest in certain property owned by Chase and his wife, Dorothy A. Chase, as tenants by the entirety. Mrs. Chase is also a defendant in this action. The property is the home of the defendants. Plaintiff seeks partition of the estate for the joint lives of Mr. and Mrs. Chase, of which he is now tenant in common with Mrs. Chase. The trial court, on the authority of the Appellate Division's treatment of a parallel situation in *Silver Bay Homes v. Herrmann,* 128 *N. J. Super.* 114 (App. Div. 1974) granted the relief sought, ordering a partition sale of the estate for the joint lives of the defendants, husband and wife. Both Judge Wiley, who entered the foregoing order, and Judge Kolovsky, who spoke for the Appellate Division in *Silver Bay Homes,* expressed strong dissatisfaction with the rule they each felt compelled, by force of precedent, to follow. The rule in question is that laid down by the former Court of Errors and Appeals in *Schulz v. Ziegler,* 80 *N. J. Eq.* 199 (E. & A. 1912), of which more will be said below. We granted defendants' motion for direct certification while their appeal was pending unheard in the Appellate Division, in order to review the rule thus twice placed in question.[1] For the reasons hereinafter set forth we now reverse.

The facts of the case are not in dispute. Defendants, Arthur and Dorothy Chase, took title as tenants by the entirety to a one-family house in Toms River, in November 1971, having obtained a mortgage for the full purchase price of $25,990 from the Lincoln Savings Bank. With their

---

[1]For other expressions of dissatisfaction with particular aspects of the law relating to tenancies by the entirety, as well as with the continued existence of this "peculiar estate," see *King v. Greene,* 30 *N. J.* 395, 413–15 (1959) (Weintraub, C. J., dissenting); *Mueller v. Mueller,* 95 *N. J. Super.* 244, 248 (App. Div. 1967) (Sullivan, J.); *Fort Lee Savings & Loan Ass'n v. LiButti,* 106 *N. J. Super.* 211, 214–20 (App. Div. 1969) (Carton, J., dissenting), rev. for reasons given in dissenting opinion below, 55 *N. J.* 532 (1970); 2 *American Law of Property* § 6.6, p. 32 (Casner ed. 1952).

two small children, they have occupied the home since January 5, 1973.[2] Defendant, Arthur D. Chase filed a petition in bankruptcy on October 2, 1972, and was discharged in bankruptcy on February 5, 1973. On November 20, 1972, plaintiff purchased from the trustee in bankruptcy all Mr. Chase's interest in the premises for a consideration of $1,000, and thereupon received a trustee's deed. Mrs. Chase, with her family, continued to occupy the property, denying access to Mr. Newman. Consequently, on October 22, 1974, Newman instituted this partition action, seeking in addition an accounting from Mrs. Chase for one-half the rental value of the premises from January 5, 1973. On motion for summary judgment, the trial court found for plaintiff and ordered a partition sale of the tenancy in common for the joint lives of Mr. and Mrs. Chase, specifying that the sale would not affect in any way rights of survivorship. A stay of the order was granted pending this appeal.

The history of the law relating to tenancies by the entirety in New Jersey need not be retraced here. It is discussed at length in this Court's opinion in *King v. Greene, supra,* 30 *N. J.* 395 (1959) and in Justice Hall's dissenting opinion in that case. 30 *N. J.* at 415. Since the adoption of the Married Women's Act of 1852, the rights of each spouse in property owned by them as tenants by the entirety have been the same. After the passage of that legislation, "[t]here was no longer any distinction between the spouses. Each could do what the other could." *King v. Greene, supra,* at 418 (Hall, J., dissenting). Each tenant by the entirety is a tenant in common with the other during the joint lives of the spouses. Upon the death of a spouse, the survivor is then the sole owner.[3]

---

[2]The record does not indicate why their occupancy did not commence earlier. It may perhaps be inferred that the house was still under construction.

[3]This sentence has been carefully worded to avoid expressing any position as to whether the blossoming of full title in the surviving

Since the decision in *King v. Greene, supra,* it has been the law of this State that the purchaser at an execution sale under a judgment entered against a tenant by the entirety acquires the right of survivorship of the debtor spouse as well as the interest of the latter in the life estate for the joint lives of husband and wife.[4] This statement rests upon the assumption that the levy under the judgment and the ensuing sale purport to reach and include all of the right, title and interest of the debtor spouse. The purchaser from a trustee in bankruptcy, such as the plaintiff here, acquires the same interest in the real estate of the bankrupt spouse as does the purchaser at judicial sale mentioned above. 11 *U. S. C. A.* § 110; *In Re Ved Elva, Inc.,* 260 *F. Supp.* 978 (D. N. J. 1966). Hence Mr. Newman, at the time he instituted this action, had succeeded to both Mr. Chase's interest as tenant in common for the joint lives of Mr. and Mrs. Chase, and also the interest of which Mr. Chase would come into full possession and enjoyment should he survive his wife. It is solely as owner of the former interest that plaintiff here seeks relief by way of partition.

It is conceded that there may be no partition with respect to lands held by spouses as tenants by the entirety.

---

spouse springs from a "right of survivorship" (*"jus accrescendi"*), or whether it emanates directly and solely from the original grant or devise. The former is the more customary expression. Early support for the latter and far more metaphysical mode of germination appears in the opinion of Ewing, C. J., in *Den v. Hardenburgh,* 10 *N. J. L.* 42, 46 (Sup. Ct. 1828).

[4]Prior to the Married Women's Act of 1852 a judgment creditor of a husband who held as tenant by the entirety could reach the entire joint life estate of the two spouses. This followed from the then prevailing rule that a husband was entitled to the possession and enjoyment of his wife's real estate during their joint lives. As we have seen, after the passage of the Act of 1852, the wife became entitled to the possession and enjoyment of her one-half interest in this joint estate. The rights of judgment creditors were affected accordingly. *Buttlar v. Rosenblath,* 42 *N. J. Eq.* 651 (E. & A. 1887).

*Dvorken v. Barrett,* 100 *N. J. Super.* 306, 309 (App. Div. 1968) aff'd 53 *N. J.* 20 (1968) ; *Lawrence v. Lawrence,* 79 *N. J. Super.* 25, 32 (App. Div. 1963) ; *Gery v. Gery,* 113 *N. J. Eq.* 59 (E. & A. 1933). It is equally well settled that as between or among tenants in common partition may normally be had as of course. *Drachenberg v. Drachenberg,* 142 *N. J. Eq.* 127, 134 (E. & A. 1948) ; *Wujciak v. Wujciak,* 140 *N. J. Eq.* 487 (Ch. 1947). As we have said, plaintiff and defendant, Dorothy A. Chase, are now tenants in common of the estate for the joint lives of Arthur and Dorothy Chase. Yet despite their being tenants in common of this estate, we think that here the remedy of partition should not be available as a matter of right.

In *Bilder v. Robinson,* 73 *N. J. Eq.* 169 (Ch. 1907) suit was brought by a purchaser at execution sale of all the right, title and interest of a debtor-husband, in and to property held by him and his wife as tenants by the entirety. The bill of complaint sought the appointment of a receiver to collect rents and pay to complainant his proper share. The receiver was appointed. In the course of his opinion Vice Chancellor Stevenson indicated that had partition been sought, he might have been disposed to grant relief in that form. No authorities were cited to support this dictum. However, in *Schulz v. Ziegler, supra,* 80 *N. J. Eq.* 199 (E. & A. 1912) the Court of Errors and Appeals squarely held that partition may be had by the transferee of the interest of one spouse as against the other spouse. In *Schulz,* a father had conveyed to his daughter his interest in property which he held with his wife as tenants by the entirety; the daughter then sought, and was granted, partition of the possessory estate as between herself and her mother.

In *Riccio v. Riccio,* 101 *A.* 426 (Ch. 1917), our former Court of Chancery, giving a very broad interpretation to the holding in *Schulz,* concluded that the reasoning of that case applied to the situation in which one spouse sought partition as against the other spouse of the possessory interest during coverture. This decision was overruled in

*Gery v. Gery, supra,* where Justice Case, speaking for the Court, held that although the interests of husband and wife were "essentially" those of tenants in common, nevertheless during coverture each was seized of the indivisible whole of the property, so that there could be no partition.[5]

The Appellate Division, in *Silver Bay Homes v. Herrmann, supra,* 128 *N. J. Super.* 114 (1974) was presented with substantially the same factual situation which exists here. Feeling itself bound by *Schulz* it determined, albeit reluctantly, that the purchaser of the husband's interest from his trustee in bankruptcy might have partition of the possessory interest for the joint lives of the spouses.

Certification was not sought in that case. The instant suit, however, presents an almost identical fact situation and affords us an opportunity to rule on the issue. We now decide that although a debtor's interest in property held as tenant by the entirety may be reached by his or her creditors, the remedy of partition is not automatically available to a purchaser at execution sale or to a grantee of a trustee in bankruptcy such as the plaintiff in this action.

As we have already indicated, there are a number of cases in New Jersey holding — or at least stating — that a tenant in common has an absolute right to partition. See, for

---

[5]The language of this opinion affirms the common-law concept of a tenancy by the entirety as an estate in which each spouse is seized *"per tout et non per my,"* thus distinguishing it from a joint tenancy, in which the tenants are seized *"per tout et per my,"* and a tenancy in common, in which they are seized *"per my et non per tout."* See *Gery v. Gery, supra,* 113 *N. J. Eq.* at 64–65. Such a view is also taken by the New Jersey Transfer Inheritance Tax Bureau, which has uniformly held that while the transfer of property to the survivor of a joint tenancy is, at least presumptively, a taxable event, this is not true of the "transfer" to a surviving spouse of real property held by the entirety. *N. J. S. A.* 54:34–1 (f) ; *N. J. A. C.* 18:26–5.11, 18:26–6.4. The reason for this special treatment seems to have been ascribed to a legislative policy favoring tenancies by the entirety, presumably with the purpose of providing protection for the surviving spouse. *Ten Eyck v. Walsh,* 139 *N. J. Eq.* 533, 540 (Prerog. Ct. 1947).

instance, *Goodpasture v. Goodpasture,* 115 *N. J. Super.* 189, 195 (Ch. Div. 1971) ; *Drachenberg v. Drachenberg, supra,* 142 *N. J. Eq.* 127, 134 (E. & A. 1948) ; *Michalski v. Michalski,* 50 *N. J. Super.* 454, 460 (App. Div. 1958) ; *Wujciak v. Wujciak, supra,* 140 *N. J. Eq.* 487, 489 (Ch. 1947) ; *Bentley v. Long Dock Company,* 14 *N. J. Eq.* 480, 489 (Ch. 1862) ; aff'd *sub nom. Manners v. Bentley,* 15 *N. J. Eq.* 501 (E. & A. 1863). Reliance is sometimes placed upon relevant legislation, *N. J. S. A.* 2A:56–1, *et seq.,* although the statutory language is permissive rather than mandatory.

██ ██ But partition is also an ancient head of equity jurisdiction, an inherent power of the court independent of statutory grant. 4 *Pomeroy, Equity Jurisprudence* §§ 1387–90 (5th ed. 1941) ; 68 *C. J. S. Partition* § 62b at 95–96; *Martin v. Martin,* 106 *N. J. Eq.* 258, 260 (Ch. 1930) ; *Grassman v. Badgley,* 90 *N. J. Eq.* 203, 206 (Ch. 1919). *Cf. Freeth v. Rule,* 118 *N. J. Eq.* 285, 286 (E. & A. 1935). In the exercise of this power our courts of equity have not hesitated to exercise discretion as to the particular manner in which partition is effected between the parties.

It is an established principle that a court of equity, in decreeing partition, does not act ministerially and in obedience to the call of those who have a right to the partition, but founds itself on its general jurisdiction as a court of equity, and administers its relief *ex aequo et bono,* according to its own notions of general justice and equity between the parties. [*Woolston v. Pullen,* 88 *N. J. Eq.* 35, 40 (Ch. 1917)]

See also *Hotchkin v. Hotchkin,* 105 *N. J. Super.* 475 (Ch. Div. 1969) (partition of personal property) ; *Lipin v. Ziff,* 53 *N. J. Super.* 443 (Ch. Div. 1959) ; *Barrell v. Barrell,* 25 *N. J. Eq.* 173 (Ch. 1874) ; *Hall v. Piddock,* 21 *N. J. Eq.* 311 (Ch. 1871).

No case in this state has hitherto gone so far as to deny absolutely the right of partition to a petitioning cotenant, at least in the absence of a prior agreement not to partition. *Yglesias v. Dewey,* 60 *N. J. Eq.* 62 (Ch. 1900) ; *cf.*

*Michalski v. Michalski, supra,* 50 *N. J. Super.* at 462–63. In other jurisdictions, however, courts have allowed equitable defenses to be raised to defeat relief by way of partition. In *Craig v. Maher,* 158 *Or.* 40, 74 *P.* 2d 396 (1937), for instance, the petitioning cotenant was a lawyer who had acquired a one-fifteenth interest in real property as a consideration for professional services. The court found that partition, whether in kind or by sale, would be unduly prejudicial to the defendant, and granted instead a monetary award. Many jurisdictions have adopted a similar rule with respect to cotenants of minerals in place, including oil and gas rights. With respect to such interests one court said

> [A] court of equity is vested with sufficient discretion in awarding or denying relief [by way of partition] to prevent the remedy from becoming an instrument of fraud or oppression. [*Shell Oil Co. v. Seeligson,* 231 *F.* 2d 14, 17 (10th Cir. 1955)]

See also *Sadler v. Public Nat. Bank & Trust Co.,* 172 *F.* 2d 870, 876 (10th Cir. 1949); *Holland v. Shaffer,* 162 *Kan.* 474, 178 *P.* 2d 235, 173 *ALR* 845 (1947).

In the case of partition sought by a transferee of the interest of one spouse in the family home, considerations of policy persuade us that a court should be permitted to exercise its equitable discretion in deciding whether or not to allow the remedy. While the original reason for the peculiar characteristics of a tenancy by the entirety was no doubt the common-law concept of the unity of husband and wife, 2 *American Law of Property, supra,* § 6.6, the fact that the Legislature has preserved these characteristics[6]

---

[6]This is true, for example, in the special treatment of the transfer inheritance tax, footnote 5 *supra.* A similar attitude is evident in the provision for veterans' property tax exemptions, *N. J. S. A.* 54:4–8.18 (a veteran who holds as a joint tenant or a tenant in common may apply his deduction only against the value of his fractional interest in the property, but one who holds as tenant by the entirety may apply this deduction against the whole value of the property). Note also the specific statutory omission of tenants by the entirety from the definition of cotenants entitled to partition. *N. J. S. A.* 2A:56–1.

indicates that they continue to serve the ends of public policy. In *Sanders v. Sanders,* 118 *N. J. Super.* 327, 330 (Ch. Div. 1972), the court characterized a tenancy by the entirety as

[A] protection of the parties to a marriage as security to both spouses during coverture of marital assets that were the work products of their marital economic life and the additional security to the surviving spouse upon the termination of their union by death of the other.

See also *Ten Eyck v. Walsh, supra,* 139 *N. J. Eq.* 533, 540 (Prerog. Ct. 1947).

In effect, the special treatment of tenancies by the entirety in New Jersey serves the purposes which are achieved in many states by statutory or constitutional homestead laws.[7] See *Haskins, Homestead Exemptions,* 63 *Harv. L. Rev.* 1289 (1950). Just as the homestead exemptions effect a balance between two competing social policies — on the one hand, that a debtor's assets should be available to his creditors; on the other, that the family of a debtor should not become a charge upon the state — so can an equitable treatment of the rights of a purchaser of one spouse's interest in a tenancy by the entirety serve to achieve a similar balance.

The life interest in residential real property for the joint lives of two spouses is a speculative asset, likely to bring only a low price and hence to be of little avail to a creditor seeking satisfaction of a spouse's debt. This consideration alone might not operate to deny to a purchaser

---

[7] Until the 1951 supersession of Title 2 of the New Jersey Statutes by Title 2A, New Jersey also had a homestead law, *N. J. R. S.* 2:26–110 (1937), exempting from the claims of creditors real property used as a residence by a householder debtor, to the extent of one thousand dollars. Although this statute appears as *2A:27–31* in the Tentative Draft of Title *2A,* it was not enacted. No reviser's notes or other contemporary sources exist which shed light on the intentions of the Legislature.

the right of partition, especially as it has long been held that life estates are partible. *Buckis v. Townsend,* 100 *N. J. Eq.* 374 (Ch. 1927). But when the creditor's interest in the dwelling is weighed against that of the debtor's family, equitable principles persuade us that the creditor should not, as of right, be granted such minimal relief at the cost of dispossessing the family of its home.

We do not go so far as to hold that a purchaser at an execution sale or from a receiver or trustee in bankruptcy may never be entitled to partition. There is no limit to the value of real property which can be held by husband and wife as tenants by the entirety. Were partition to be automatically denied, there might well be situations in which a debtor would thus be afforded "opportunity to sequester substantial assets from just liabilities." *Way v. Root,* 174 *Mich.* 418, 140 *N. W.* 577, 579 (1913). But where, as in the present case, a bankrupt husband lives with his young family in a modest home, we hold that it is within the equitable discretion of the court to deny partition to a purchaser of the husband's interest, leaving the creditor to resort to some other remedy.

Nevertheless, despite the equities in favor of defendants, plaintiff has, after all, legitimately succeeded to Mr. Chase's interest in the property. While in this case we hold that policy considerations preclude partition either in kind or by sale, plaintiff is nonetheless entitled to the alternative equitable remedy of an accounting from his cotenant, Mrs. Chase. *Lohmann v. Lohmann,* 50 *N. J. Super.* 37 (App. Div. 1958); *Nobile v. Barletta,* 109 *N. J. Eq.* 119 (E. & A. 1931); *Neubeck v. Neubeck,* 94 *N. J. Eq.* 167 (E. & A. 1922); *O'Connell v. O'Connell,* 93 *N. J. Eq.* 603 (E. & A. 1922); *Bilder v. Robinson, supra,* 73 *N. J. Eq.* 169 (Ch. 1907).

The cited cases involve for the most part commercial properties with respect to which rents paid by third parties were collected by the cotenant in possession. It is settled law in New Jersey that in such circumstances the cotenants out of possession are entitled to an accounting

for their share of the rents, issues and profits. *Lohmann v. Lohmann, supra,* and cases there cited. With respect to the residential property involved in this case, the situation is different. The only benefit inuring to the tenant in possession is the value of her use and occupation of the property — in effect, the imputed rental value of the house. As a general rule, since each cotenant has an undivided interest in the whole estate, each is entitled to occupy the entire property. Thus, absent ouster of the other cotenants, a cotenant in possession is not required to account to them for the value of use and occupation. *Baird v. Moore,* 50 *N. J. Super.* 156, 166–68 (App. Div. 1958); *Mastbaum v. Mastbaum,* 126 *N. J. Eq.* 366 (Ch. 1939). We think, however, that where one cotenant, with her family, remains in possession of a one-family house which is not susceptible of joint occupancy, and refuses to accede to plaintiff's demands for access to the property, such conduct clearly constitutes. an ouster. *Mastbaum v. Mastbaum, supra; Maxwell v. Eckert,* 109 *A.* 730 (Ch. 1920), *Rowden v. Murphy,* 20 *A.* 379 (Ch. 1890); *Edsall v. Merrill,* 37 *N. J. Eq.* 114 (Ch. 1883). Mrs. Chase is thus accountable to Mr. Newman for one-half the imputed rental value of the house.

 ██ This conclusion does not end the calculation, however, for the property is encumbered by a mortgage the principal amount of which was $24,150.98 on January 1, 1973. Mrs. Chase asserts that since then she has been making mortgage, tax, and insurance payments and undertaking necessary repairs to the house. Absent ouster, a cotenant in possession is entitled to contribution from cotenants out of possession for payments made to preserve the common property; see the discussion of the development of this doctrine by Judge Conford in *Baird v. Moore, supra,* 50 *N. J. Super.* at 165–66. When, as here, there has been an ouster but the ousted cotenant receives an accounting based on the value of the use and occupation by the cotenant in possession, equity requires that appropriate pay-

ments made by the cotenant in possession be credited in calculating what is due the cotenant out of possession.

Plaintiff in his prayer for partition included a demand for one-half the rental value of the premises dating from January 5, 1973, when defendants first occupied the property. To this he is entitled. This sum, subject to an offset, pro rata, for appropriate payments made by Mrs. Chase, will be included in the final judgment.

The judgment of the trial court is reversed and the cause is remanded to it for further proceedings not inconsistent with this opinion.

SULLIVAN, J. (concurring and dissenting). In *Mueller v. Mueller,* 95 *N. J. Super.* 244, 248 (App. Div. 1967), I noted that the estate of tenancy by the entirety "spawns numerous title problems and disputes." This is but another example. I agree that plaintiff is not entitled to partition. However, although I recognize that it follows established case law, I disagree with that part of the majority decision which holds that plaintiff has a present possessory interest in the homestead property as a tenant in common with the other spouse during the coverture and is entitled to an accounting of that spouse's possession.

We are here concerned with the family homestead owned by the husband and wife as tenants by the entirety. Each, and both as an entity, own the entire interest. Each, and both, are entitled to the entire possession. While the husband and wife are considered tenants in common during their joint lives, this is solely by virtue of their being married to each other.

A purchaser at a bankruptcy sale, even though the interest of the debtor spouse is purchased, cannot step into that spouse's shoes as a tenant in common with the other spouse. That smacks of the bankruptcy sale reaching into the marital union itself.

I would hold that the bankruptcy sale purchaser of a debtor-spouse's interest in the marital homestead owned by

the entirety does not acquire a present possessory interest in such property as a tenant in common with the other spouse and is not entitled to an accounting from the other spouse of that spouse's possession during the coverture.

Should the debtor-spouse survive the other spouse, the purchaser would then become the owner of the property. If the marriage is terminated by divorce, the purchaser would then own an undivided one-half interest in the property as a tenant in common. He is entitled to no more.

PASHMAN, J. (concurring in part and dissenting in part). I concur in the result reached by the majority with respect to plaintiff's request for partition of the Chase family home. I must dissent, however, from that part of the majority opinion which provides plaintiff with a right to an accounting as a tenant in common in this property during the joint lives of Mr. and Mrs. Chase.

The right to an accounting, like the action for partition, is essentially an equitable remedy. *Lohmann v. Lohmann*, 50 *N. J. Super.* 37 (App. Div. 1958); *Meisler v. Meisler*, 4 *N. J. Super.* 579 (App. Div. 1949); *Neubeck v. Neubeck*, 94 *N. J. Eq.* 167 (E. & A. 1922); *O'Connell v. O'Connell*, 93 *N. J. Eq.* 603 (E. & A. 1922); *Bilder v. Robinson*, 73 *N. J. Eq.* 169 (Ch. 1907); 86 *C. J. S., Tenancy in Common*, §§ 77, 78; 4 *Pomeroy, Equity Jurisprudence* (5 ed. 1941), § 1421 at 1078–1081. Consequently, the same equitable considerations which warrant the denial of a partition in this case must also be measured against the necessity for an accounting. An assessment of these factors impels me to conclude that *both* partition and accounting should be denied. Plaintiff should retain only the possibility of a fee simple interest (the so-called "right of survivorship") subject to defeasance should Mrs. Chase survive her husband. In *King v. Greene*, 30 *N. J.* 395, 412 (1959) we held that this "speculative" interest is freely alienable and can be made subject to execution for a spouse's debts. *Cf. In re Ved Elva, Inc.*, 260 *F. Supp.* 978, 981–982 (D. N. J.

1966) ; *Joseph Harris & Sons, Inc. v. Van Loan,* 23 *N. J.* 466 (1957).

Although the incidents of estates by the entirety were founded upon the antiquated notion of legal unity of husband and wife, the continued utility and vitality of that form of joint ownership persist within specified circumstances. 4A *Powell, Real Property,* ¶ 623; 4 *Thompson, Real Property* (1961 rev.), §§ 1784–92 *passim; Gery v. Gery,* 113 *N. J. Eq.* 59, 64–65 (E. & A. 1933) ; *Ten Eyck v. Walsh,* 139 *N. J. Eq.* 533, 540 (Prerog. 1947). For example, as the majority observes, this tenancy "serves the purposes which are achieved in many states by statutory or constitutional homestead laws." *Ante* at 265. In *Fort Lee Savings & Loan Ass'n v. LiButti,* 106 *N. J. Super.* 211 (App. Div. 1969), reversed for reasons stated in the dissenting opinion below, 55 *N. J.* 532 (1970), Judge Carton, the dissenting judge in the Appellate Division, described this underlying social function as follows:

The social purpose of the tenancy by the entirety seems to be to solidify the marital status by encouraging and protecting home ownership and to protect and insulate the institution of marriage from the onslaught of creditors. Upon death of one of the spouses, it assures the survivor, normally the wife, possession of a home free and clear of the individual indebtedness of the other. [106 *N. J. Super.* at 216]

The language cited by the majority from *Sanders v. Sanders,* 118 *N. J. Super.* 327, 330 (Ch. Div. 1972) further indicates the continued viability and importance of certain features of this traditional tenancy. *See also Ten Eyck v. Walsh, supra,* 139 *N. J. Eq.* at 540.

Protection of the marital home when a family has suffered financial reversals, as in the present case, is thoroughly consistent with federal bankruptcy principles which extend a "fresh start" in life to honest but unfortunate debtors and their families. *Local Loan v. Hunt,* 292 *U. S.* 234, 244, 54 *S. Ct.* 695, 78 *L. Ed.* 1230, 1235 (1934) ; *Stellwagon v. Clum,* 245 *U. S.* 605, 617, 38 *S. Ct.* 215, 62 *L. Ed.* 507, 512 (1918) ; *Williams v. U. S. Fidelity,* 236 *U. S.* 549,

554–55, 35 *S. Ct.* 289, 59 *L. Ed.* 713, 716–17 (1915); 11 *U. S. C. A.* § 24. Requiring Mrs. Chase to make an accounting in this case would contradict the "fresh start" sought by her husband through the bankruptcy proceedings. Mrs. Chase, though not a party to the bankruptcy proceedings, would be directly and unfairly subject to its "penalties." Moreover, the imposition of this additional burden on the family might result in dispossession of the family, forcing it to become a "charge upon the state" and thereby defeating one of the salient purposes of this tenancy. *See ante* at 265. Finally, there is something offensive about an outside bidder at a bankruptcy sale intruding upon the privacy of a marital home and obtaining a substantial right for an inordinately low bid. In this respect, I join with my Brother Sullivan who observes that the accounting ordered by the Court today "smacks of the bankruptcy sale reaching into the marital union itself." *Ante* at 268. As a matter of equity, I would not permit it.

Obviously, were this estate relinquished as a family homestead or were the property devoted to a commercial use, the protective limitation on the rights of the plaintiff would dissipate and equity might then grant him an accounting. Precedent exists for providing relief under such circumstances. *See, e. g., Schulz v. Ziegler,* 80 *N. J. Eq.* 199 (E. & A. 1912) (husband *voluntarily* alienated his interest in the estate); *Lohmann v. Lohmann, supra,* 50 *N. J. Super.* 37 (husband and wife jointly owned several *business* properties including a tavern, a restaurant and a parking lot); *Neubeck v. Neubeck, supra,* 94 *N. J. Eq.* 167 (husband and wife jointly owned income-producing rental properties); *Bilder v. Robinson, supra,* 73 *N. J. Eq.* 169 (husband and wife jointly owned income-producing rental properties).

However, such situations are readily distinguishable from the case before us since here we are concerned with a family homestead. The court in *Neubeck v. Neubeck, supra,* 94 *N. J. Eq.* 167, for example, invoked equitable principles to reach a conclusion based on this distinction. Thus, while the

court permitted an accounting as to all jointly held commercial property for a cotenant by the entirety who had abandoned her husband, the court denied similar relief as to that jointly held property which was still occupied as a family residence. *Accord, O'Connell v. O'Connell, supra,* 93 *N. J. Eq.* 603. While I recognize that these cases, unlike the present case, did not involve a technical "ouster" of one cotenant by the other, the protection which the Court afforded the familial abode is illustrative of the judicial deference which is accorded that interest.

By advocating the denial of an accounting in the instant case, I should not be understood to suggest a complete resurrection of the ancient incidents of the estate by the entirety. The Married Women's Act of 1852 eliminated many of the more inequitable and objectionable aspects of that form of joint ownership. In addition, as former Chief Justice Weintraub observed in *King v. Greene, supra,* 30 *N. J.* at 413 (Weintraub, C. J., dissenting), "[t]he estate by the entirety is a remnant of other times." Nevertheless, while it has been clearly held that the tenancy by the entirety "has many of the aspects of a tenancy in common, . . . [it] has not been abolished in this jurisdiction. It still exists in *sui generis* species of tenancy with its origin solely in the marriage state." *Gery v. Gery, supra,* 113 *N. J. Eq.* at 64.

I recognize that case law regards the purchaser of a spouse's interest in a tenancy by the entirety as obtaining a present possessory interest as a tenant in common. Nonetheless, the entitlement of the purchaser to an accounting, where there is an ouster by one cotenant, has never been applied to a set of circumstances precisely analogous to that before us. I would urge that we not do so today. I would deny both partition and accounting in this case.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, CLIFFORD and SCHREIBER and Judge CONFORD—5.

*Concurring and dissenting*—Justices SULLIVAN and PASHMAN—2.