224 N.J. Super. 603 (1988)
541 A.2d 229
SHARON BAKER, PLAINTIFF-APPELLANT,
v.
FRANK DRABIK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1988.
Decided April 22, 1988.
*604 Before Judges PETRELLA, DREIER and BAIME.
Russell H. Hulsizer argued the cause for appellant (Russell H. Hulsizer on the brief).
Richard J. Greenberg argued the cause for respondent (Sorge & Greenberg, attorneys; Richard J. Greenberg on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Sharon Baker appeals from the May 28, 1987 dismissal by the Chancery Division of her partition action and the determination that she had no rights in property which she purchased as a tenant in common with defendant Frank Drabik. Baker argues that she has a right to partition and that the trial judge incorrectly applied the law; that the concept of owelty *605 was not relevant to the issue before the trial court; that the pretrial order barred defendant from affirmative relief absent proof of fraud, and in the absence of fraud the trial judge could not divest plaintiff of her interest in the property. We reverse.
Some time prior to the April 1985 filing of the lawsuit Drabik was contacted by Baker's attorney who requested that he either sell the jointly purchased house or pay Baker for half of it. That request was rejected. On April 17, 1985 Baker instituted a partition action seeking a determination that she was seized of a one-half undivided interest in the land, and alternatively seeking a sale of the land. She also requested an accounting of all sums of money which she expended and of the value of Drabik's use and occupancy of the lands and building in Drabik's possession.
Drabik counterclaimed on June 27, 1985 on the grounds that property was purchased on her representation that they would be married and her promise that the premises would be used as a marital home. He alleged that Baker knew these representations were false. He also alleged that in reliance on Baker's representations he had the deed made out to them both as tenants in common. He thus sought to have the conveyance to Baker and himself as tenants in common set aside and a determination that he was the rightful owner. Drabik's claim of alleged fraudulent promise to marry was abandoned prior to trial. Instead he asserted that Baker fraudulently represented "that she would assist in the paying of the contemplated mortgage, taxes, utilities and other expenses."
Baker and Drabik purchased a house at 517A Mountain Avenue, Springfield, in 1977 when they were engaged to be married at some unspecified future date. Both parties signed the contract and the mortgage agreement. At the time the contract was signed, they paid a $6,400 deposit. At the closing on September 23, 1987 a mortgage was given by Crestmont Savings & Loan Association in the amount of $51,000. The purchasers also paid $8,046.50 at the closing which represented *606 the $6,400 balance of the purchase price, adjustments and closing costs. They received a deed naming them as tenants in common. After they had lived together in the house for about two years (September 23, 1977 to December 31, 1979), Baker moved out because of differences. A reconciliation occurred, and she moved back around June 30, 1982 and resumed making the contributions she had previously made. The reconciliation lasted a little more than a year, and Baker moved out again around September 1, 1983.
The trial judge found credible Baker's testimony that she contributed approximately $4,000 in cash towards the purchase, $2,000 of which was from an account she received from a relative, and an additional $1,500 to $2,000 that she obtained from her Ciba-Geigy Credit Union. He made no findings as to whose funds were used to pay the amounts due at the closing.
Although Drabik had testified that he paid the $6,400 deposit from his savings account and a cash reserve account, the judge found that he only contributed about $2,400. Drabik said that he paid the additional balance and closing costs, but that on the final closing they had insufficient funds and Baker had to borrow a "couple thousand" to pay the attorney's fees.[1] He did not think that Baker's contribution amounted to $4,000, although he acknowledged that she put some extras into the house like special kitchen cabinets.
The parties had agreed that Drabik, whose salary was larger, would pay the mortgage, which included real estate taxes. Baker was to contribute what she could towards utilities, taxes and household expenses. Baker was unable to provide documentation showing the payments that she made on account of utilities and the like. She testified that the receipts were in the house, and Drabik would not let her in to obtain them or some *607 of her furniture.[2] Baker also contributed by way of doing the laundry, cleaning and preparing the food.
Drabik testified that while he covered most of the expenses, the purchase of the house was supposed to have been a joint venture, with "everything split down the middle." He said that although Baker had said she would contribute toward the mortgage he made all the mortgage payments and paid all the utilities. He acknowledged that Baker paid the telephone and water bills, although he occasionally had to pay these bills if Baker spent the money on something else. He agreed that most of Baker's salary went into household expenses and that overall he was satisfied with Baker's contributions.
After a trial on March 23, 1987, the judge reserved decision. On May 20, 1987 he rendered an oral opinion in which he found that the parties were tenants in common by virtue of the September 23, 1977 deed; a joint venture was involved; defendant failed to prove any fraud on the part of Baker, and there was no fraud committed by Baker. He determined that the balance of the purchase price, after the $6,400 deposit, was financed by the purchase money mortgage executed by both parties. Factually this was not so. The deposit and mortgage only amounted to $57,400, leaving $6,600 due on just the purchase price aspect. As noted the judge found that Baker contributed approximately $4,000 towards the down payment and Drabik contributed approximately $2,400 towards the downpayment.
The judge determined that Baker was not ousted from the property by Drabik but left of her own free will.[3] He then concluded that the value of her use and occupancy of the property during the time when she resided there exceeded the *608 amount she contributed toward the down payment in the initial purchase, and she was not entitled to reimbursement for any sporadic payments she may have made. The judge further concluded that Baker had made no attempt to assist with the mortgage payments or related maintenance costs during the entire period from the purchase of the house to the present time. We note that this finding was somewhat inconsistent with Drabik's testimony in that Drabik conceded that Baker did pay certain utility bills and household expenses. The judge ordered that Baker was entitled to return of the refrigerator and dining room set, without charging Drabik either for the use of those items during the time period or recognizing the value of the use and occupancy of the premises to Drabik.
The judge then proceeded to grant Baker's request for equitable partition, but he allowed Drabik to remain in possession of the premises. He stated that Drabik had lived in the house for "nearly ten years"[4] and made all the mortgage payments. Since he found that Baker had only contributed minimally towards the cost of the property he concluded that she was entitled to no monetary compensation. He further decided that she was to have no further interest in the property.
It is clear from the conduct of the parties at the time of the purchase, and by their subsequent conduct in the ensuing four years, that their intent, as the deed reflected, was to own the property as tenants in common. Indeed, the judge considered this undisputed and made it part of his findings.
We start with the proposition, recognized by the Chancery Judge here, that "as between or among tenants in common partition may normally be had as of course." Newman v. Chase, 70 N.J. 254, 261 (1976). See also Drachenberg v. *609 Drachenberg, 142 N.J. Eq. 127, 134 (E. & A. 1948). The remedy of partition is not necessarily available as a matter of right in all cases:
It is an established principle that a court of equity, in decreeing partition does not act ministerially and in obedience to the call of those who have a right to partition, but founds itself on its general jurisdiction as a court of equity and administers its relief ex aequo et bono according to its own notions of general justice and equity between the parties. [Newman v. Chase, supra (70 N.J. at 263) (quoting Woolston v. Pullen 88 N.J. Eq. 35, 40 (Ch. 1917))].
In denying a partition in Newman, the court found it significant that plaintiff Newman had purchased defendant's interest in land from defendant's trustee in bankruptcy. The land was also owned by the bankrupt's wife. By virtue of the purchase, plaintiff became a tenant in common with the bankrupt's wife who thereafter sought partition. The court stressed that a purchaser from a trustee in bankruptcy or from a receiver or at an execution sale might be entitled to partition, in certain circumstances. However, based on the facts of the case, the court found that where "a bankrupt husband live[d] with his young wife in a modest home," the court in its equitable discretion could deny partition, although plaintiff was entitled to an accounting. 70 N.J. at 266.
Newman distinguished the holding in Baird v. Moore, 50 N.J. Super. 156, 166-168 (App.Div. 1958), where the court held that there is no requirement that the cotenant in possession account to the other cotenants in the absence of ouster. Rather, the court decided that "where one cotenant with her family, remains in possession of a one-family house which is not susceptible of joint occupancy and refuses to accede to plaintiff's demands for access to the property, such conduct clearly constitutes an ouster." 70 N.J. at 267. Hence, the bankrupt's wife was accountable to plaintiff for one-half of the imputed rental value.
The Chancery Judge in the case before us relied on his interpretation of the decision in Reitmeier v. Kalinoski, 631 *610 F. Supp. 565 (D.N.J. 1986). He determined that it would be inequitable to partition the land and force Drabik to leave the house where he had resided for almost 10 years[5] and had paid most of the carrying charges. The judge also found no ouster.[6] In our view, the learned judge below misapplied Reitmeier, supra which was not even binding precedent.
Reitmeier involved a partition action. The parties had been engaged to be married. They purchased what they anticipated would be their marital home. Id. at 565. Defendant Kalinowski broke the engagement and never resided in the house, although she contributed toward certain fixtures and repairs. Reitmeier had paid the entire down payment, closing costs, and mortgage payments (with the possible exception of the first payment). The deed was taken and the mortgage was given in the names of both parties. Although both parties sought partition, the court quieted title in the parties in accordance with the tenor of an agreement which they had entered into the day that the deed was delivered. Id. at 574. While observing that partition is statutory, see N.J.S.A. 2A:56-1 et seq., the court considered that it was an equitable remedy.
The property in Reitmeier was a single-family residence not easily capable of physical partition, and would normally be sold under N.J.S.A. 2A:56-2 with the proceeds of sale divided between the cotenants. Reitmeier v. Kalinoski, supra (631 F. Supp. at 575). Since equitable concepts were applicable and plaintiff wished to reside in the property, the judge granted partition allowing plaintiff to take the entire property as long as he compensated defendant with an "owelty," which represented an equalization charge. The judge noted that "mere animosity between the parties" would not support a finding of *611 ouster and concluded that there had been neither actual nor constructive ouster. Id. at 580.
The Reitmeier court considered that Baird, supra, and Newman, supra, might even permit recovery for use and occupation absent an ouster. However, it concluded that defendant was not entitled to the value of plaintiff's use and occupation since plaintiff had paid for all costs of maintenance and repair. Id. at 581. Although Reitmeier held that plaintiff could keep the property, defendant was entitled to share in its monetary value. Id. at 578-579. The compensation due defendant in Reitmeier was to be reduced pro rata based on plaintiff's assumption of the mortgage and his payments of the mortgage, insurance and utility bills. In the case before us, the trial judge completely ignored that aspect of Reitmeier.
We reject the judge's conclusion that the value of Baker's use and occupancy exceeded her contribution.[7] As a cotenant she would, in the usual situation, and absent ouster, not have been charged for use and occupancy, and at most the other cotenant would have a claim that the expenses should be shared. Effectively the trial judge forfeited plaintiff's equity in the property and any sharing in the increase in the property value over the years. The facts in this case are quite different from those in Reitmeier which was essentially decided as a conditional gift case. Compare Aronow v. Silver, 223 N.J. Super. 344, 353 (Ch.Div. 1987). In the instant case the parties did share in the down payment and expenses to some extent and resided together in the house for an aggregate period of almost four years.
The Chancery Judge here not only found grounds to offset any rental which might have been due Baker as the nonoccupying *612 owner, but such a minimal ownership interest as to completely oust her from all ownership rights. Even applying the principles and reasoning in Reitmeier, at most Drabik might be allowed to remain as sole occupant of the premises. However, he must pay Baker an appropriate amount in compensation for her share as a cotenant, with a credit for her share of the principal reduction portion of the mortgage payments and capital improvements. The balance of the mortgage payments and the real estate taxes, insurance and other reasonable carrying charges represent the reasonable value of Drabik's use and occupancy and he may not seek a credit for same from Baker. See Newman v. Chase, supra (70 N.J. at 267); Baird v. Moore, supra (50 N.J. Super. at 173).
We thus find it necessary to reverse and remand for entry of judgment of partition with direction that defendant, if he so elects, in lieu of partition or court ordered sale, may purchase the plaintiff's interest as tenant in common at the current fair market value, less the credits noted above. The court shall appoint an appraiser to determine the present fair market value of the property if the parties cannot agree on a fair price. We remand with the further instructions that Drabik is required in the event of a purchase by him to pay plaintiff 50% of the appraised value of the property, less one-half of the principal reductions on the mortgage and one-half of the value of any extraordinary repairs or capital improvements. A further adjustment should be made for the difference between the initial capital contributions of the parties. In addition, the Chancery Judge shall reconsider the issue of ouster in light of this opinion and may award plaintiff any appropriate credit for one-half of the value of Drabik's use and occupancy from the date of any ouster and shall award such credit from and after the filing of the counterclaim.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] The settlement statement dated September 23, 1987 discloses that the attorneys' fees paid at closing were $525, not counting a $75 review fee (presumably to the lending institution's attorney).
[2] The judge made no finding on this aspect, but if it were the fact, it might constitute the basis for an ouster. Drabik's counterclaim (filed June 27, 1985) was also an assertion of sole entitlement to possession.
[3] See footnote 2, supra.
[4] This was as of the date of the decision. As of the filing of the complaint it was less than eight years, and for nearly half of that time Baker had also resided there.
[5] See note 4, supra.
[6] See note 2, supra.
[7] It was error not only to charge one tenant in common with use and occupancy where there was no ouster (see note 2, supra), but also to compound that error by not considering any part of the use and occupancy of the other tenant in common, either for the same period as the balance of Drabik's time prior to the filing of the complaint, or even thereafter.